Christopher A. Villasenor, Esq. (SBN 147118)
**CATALYST LAW GROUP**
**A PROFESSIONAL CORPORATION**
9710 Scranton Road, Suite 170
San Diego, CA 92121
Telephone: (858) 450-0099
Facsimile: (858) 450-9834

Attorneys for Plaintiffs
JAMES GROOMS AND BRYCEMARIE PHELAN AND KNUKLE, INC., A COLORADO
CORPORATION

FILED

2009 MAR 11  PM 3: 20

CLERK, US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES GROOMS, an individual; BRYCEMARIE PHELAN, an individual; KNUKLE, INC., a Colorado corporation,<br><br>              Plaintiffs,<br>vs.<br><br>JOHN LEGGE, an individual; GWEN LEGGE, an individual; KNUKLE, INC., a California corporation; ARTILLERY DISTRIBUTION, a business entity, form unknown; SEAN MYERS, an individual; DEVIN MERCADO, an individual; and DOES 1 through 50, inclusive,<br><br>              Defendants. | Case No.  **'09 CV 0489 IEG POR**<br><br>**COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

## JURISDICTION AND VENUE

1.     Federal jurisdiction is conferred on this Court by 28 U.S.C. §§1331, 1332 and 1338 because this civil action for injunctive relief and damages arises under the Lanham Trademark Act (15 U.S.C. §1125, et seq.) and the United States Declaratory Judgment Act (28 U.S.C. §§ 2201 and 2202). This Court has supplemental or pendant jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §§ 1138 and 1367.

2.     This court has personal jurisdiction over each of the named defendants  because they, and each of them, do business in this judicial district and have used the means and instrumentalities of interstate

commerce, including but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets within this judicial district; and therefore they, and each of them, have purposefully availed themselves of the laws of this judicial district.

3.      Venue is proper in this Court under 28 U.S.C. § 1391 because the claims asserted arise in this district and/or the Defendants reside in this district.

## THE PARTIES

4.      Plaintiff JAMES GROOMS (hereinafter, "Mr. Grooms") is an individual residing in El Paso County, Colorado.

5.      Plaintiff BRYCEMARIE PHELAN (hereinafter, "Ms. Phelan") is an individual residing in El Paso County, Colorado.

6.      Plaintiff KNUKLE, INC. (hereinafter, "Knukle One") is a corporation that was formed on November 28, 2008, and that is currently duly organized and existing under the laws of the State of Colorado, with its principal place of business in Colorado Springs, Colorado. Since May 2008, Knukle One, by and through its promoters, Mr. Grooms and Ms. Phelan, has been engaged in the production, advertising and sale of apparel and accessories brandishing the trademarks, "Knukle, Inc.," "Knukle Inc" and "Knukle" ("Knukle" is misspelled omitting a "c" and the second "k" is turned backwards) using the trade name, "Knukle, Inc." (Mr. Grooms, Ms. Phelan and Knukle One are sometimes hereinafter collectively referred to herein as "Plaintiffs.")

7.      Plaintiffs are informed and believe Defendant JOHN LEGGE (hereinafter, "Mr. Legge" or "Defendant(s)") is an individual residing in Orange County, California. On information and belief, Mr. Legge and his wife, Gwen Legge, formed Knukle Two, currently own and/or control Knukle Two, and are using Knukle Two to produce, advertise and sell apparel and accessories brandishing the trademarks, "Knukle, Inc.," "Knukle Inc" and "Knukle" ("Knukle" is misspelled omitting a "c" and the second "k" is turned forwards) using the trade name, "Knukle, Inc." On information and belief, it is alleged that Mr. Legge is an alter ego of Knukle Two.

8.      Plaintiffs are informed and believe Defendant GWEN LEGGE (hereinafter, "Ms. Legge" or "Defendant(s)") is an individual residing in Orange County, California. On information and belief, Ms.

1   Legge and her husband, Mr. Legge, formed Knukle Two, currently own and/or control Knukle Two, and are

2   using Knukle Two to produce, advertise and sell wearing apparel and accessories brandishing the

3   trademarks, "Knukle, Inc.," "Knukle Inc" and "Knukle" ("Knukle" is misspelled omitting a "c" and the

4   second "k" is turned forwards) using the trade name, "Knukle, Inc." On information and belief, it is alleged

5   that Ms. Legge is an alter ego of Knukle Two.

6        9.      Plaintiffs are informed and believe Defendant KNUKLE, INC. (hereinafter, "Knukle Two" or

7   "Defendant(s)") is a corporation that was formed on September 19, 2008, and that is currently duly

8   organized and existing under the laws of the State of California, with its principal place of business in

9   Orange County, California. On information and belief, Knukle Two was formed at the behest of Defendants

10  John and Gwen Legge after they first met Mr. Grooms and Ms. Phelan, and agreed to invest in Knukle One's

11  business concept for an equity stake in Knukle One. Knukle Two was formed without Mr. Groom's or Ms.

12  Phelan's knowledge or consent. On information and belief, Knukle Two is currently owned and/or controlled

13  by Defendants John and Gwen Legge, Artillery Distribution, Sean Myers, and Devin Mercado, and Does 1

14  through 50, and is being used to produce, advertise and sell apparel and accessories brandishing the

15  trademarks, "Knukle Inc.," "Knukle Inc" and "Knukle" ("Knukle" is misspelled omitting a "c" and the

16  second "k" is turned forwards) using the trade name, "Knukle, Inc."

17       10.     Plaintiffs are informed and believe Defendant ARTILLERY DISTRIBUTION (hereinafter,

18  "Artillery Distribution" or "Defendant(s)") is a business entity, form unknown, doing business in the State of

19  California, with its principal place of business in San Diego County, California. On information and belief,

20  Artillery Distribution is a graphic design company that first provided computer-generated designs and

21  services to Mr. Grooms, Ms. Phelan, and Knukle One beginning in July 2008. Currently, upon information

22  and belief, Artillery Distribution is providing those same designs produced for Knukle One to Knukle Two,

23  and is conspiring and/or participating in the wrongful course of conduct herein described.  On information

24  and belief, Knukle Two is currently owned and/or controlled by Artillery Distribution, and is being used to

25  produce, advertise and sell apparel and accessories brandishing the trademarks, "Knukle, Inc.," "Knukle Inc"

26  and "Knukle" ("Knukle" is misspelled omitting a "c" and the second "k" is turned forwards) using the trade

27  name, "Knukle, Inc."

28

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF        3

11.     Plaintiffs are informed and believe Defendant SEAN MYERS (hereinafter, "Mr. Myers" or "Defendant(s)") is an individual residing in San Diego County, California. On information and belief, Mr. Myers owns and/or controls Artillery Distribution.   On information and belief, it is alleged that Mr. Myers is an alter ego of Knukle Two and Artillery Distribution.

12.     Plaintiffs are informed and believe Defendant DEVIN MERCADO (hereinafter, "Mr. Mercado" or "Defendant(s)") is an individual residing in San Diego County, California. On information and belief, Mr. Mercado owns and/or controls Artillery Distribution. On information and belief, it is alleged that Mr. Myers is an alter ego of Knukle Two and Artillery Distribution.

13.     The full extent of the facts linking the fictitious named defendants with the foregoing causes of action and/or true names or capacities, whether individual, corporate, partnership, associate, member, or otherwise, of defendants DOES 1 through 50 are unknown to Plaintiffs, who therefore sue defendants by such fictitious names.  Plaintiffs are informed and believe and thereon allege that each of the defendants designated herein as DOE is negligently, wantonly, recklessly, tortiously and unlawfully responsible in some manner for the events and happenings herein referred to and proximately caused injury and damages to Plaintiffs as herein alleged.  Plaintiffs will hereafter seek leave of Court to amend this Complaint to show said defendants' true names and capacities after the same have been ascertained.

14.     Plaintiffs allege on information and belief that each Defendant named herein, including those named as DOES, is, and at all relevant times mentioned was, the agent, servant, co-conspirator, and/or employee of each of the other Defendants and, in doing the things alleged herein, was acting within the course and scope and with the knowledge of each of the other named Defendants. Plaintiffs further allege on information and belief that each Defendant named herein aided and abetted the others by authorizing and/or ratifying the acts herein alleged.

15.     On information and belief, Defendants Mr. and Mrs. Legge, Mr. Myers, and Mr. Mercado with respect to Knukle Two and Artillery Distribution, and each of them, among other things:   (a) commingled funds and other assets; (b) diverted corporate funds between themselves or to other corporate entities for other than legitimate corporate purposes; (c) treated corporate assets as personal assets; (d) failed to observe corporate formalities and adhere to corporate bylaws; (e) failed to maintain an arm's-length

relationship with the corporation or between entities; (f) failed to obtain authority to issue stock or to subscribe to or issue the same; (g) used the same offices or business location; (h) employed the same employees and the same attorneys; (i) failed to maintain minutes or adequate corporate records; (j) used the corporate structure as a subterfuge of illegal transactions; (k) failed to meet payroll and other obligations; (l) made cash advances to shareholders, officers and directors; (m) were insolvent at the time of several transactions complained of herein; (n) were undercapitalized; and, therefore, there exists a unity of interest and ownership between each of these named Defendants such that any separateness between them has ceased to exist and that to adhere to the fiction of their separate identities would result in injustice.

## GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

16.     On or about the evening of May 18, 2008, Ms. Phelan, Mr. Grooms, and some friends created the name "Knukle Inc" ("Knukle" was misspelled omitting a "c" with the second "k" turned backwards). Collectively, they created the name and some initial drawings and variations that comprised the name "Knukle Inc" and included one or a pair of brass knuckles. This name and these drawings were to become the genesis of a line of apparel and accessories targeting mixed martial arts and extreme sports fans branded, "Knukle Inc."

17.     That same night, and using www.1and1.com, Mr. Grooms reserved the domain name www.knukleinc.com for $6.95, and Mr. Grooms and Ms. Phelan began pursuing their vision of creating a brand of apparel and accessories named, "Knukle Inc," and a company of the same name to produce, advertise, and sell "Knukle Inc" goods.

18.     On or about May 26, 2008, Mr. Grooms called Face First Screen Printing to discuss assisting with refining Mr. Grooms' and Ms. Phelan's "Knukle Inc" designs and printing them on certain apparel and accessories. On or about May 30, 2008, Mr. Grooms met with Face First Screen Printing and showed them Plaintiffs' designs and discussed further details of their services and costs. On or about June 5, 2008, Mr. Grooms received a price quote from Face First Screen Printing but the quote was outside of their budget.

19.     On or about June 12, 2008, Mr. Grooms and Ms. Phelan filed a federal "intent to use" trademark application for the mark, "Knukle" (with the second "k" turned backwards) under International Class 025, for goods and services including clothing, namely, t-shirts, hats, shorts, pants, socks, dresses, skirts, and shoes. The federal trademark application was assigned Serial Number 77497169 and is currently pending registration. Mr. Grooms paid $600 for the trademark registration. Mr. Grooms and Ms. Phelan sold merchandise comprising the "Knukle," "Knukle, Inc." and "Knukle Inc" marks as early as approximately July 30, 2008.

20.     On or about June 14, 2008, Mr. Grooms contacted Mask Manufacturing to talk to them about assisting with refining Mr. Grooms' and Ms. Phelan's "Knukle Inc" designs and printing them on certain apparel and accessories. On or about July 2, 2008, Mr. Grooms visited Mask Manufacturing's offices to view their shop and supplies and obtain a price quote for their services. Again, however, the quote Mask Manufacturing provided did not fit within Plaintiffs' budget.

21.     On or about July 8, 2008, Ms. Phelan and Mr. Grooms first contacted Artillery Distribution to talk to them about assisting with refining Mr. Grooms' and Ms. Phelan's "Knukle, Inc.," "Knukle Inc" and "Knukle" designs and printing them on certain apparel and accessories. Over the telephone, Mr. Grooms informed Mr. Myers and Mr. Mercado at Artillery Distribution that he and Ms. Phelan had filed an application for a trademark for the name "Knukle" and that he and Ms. Phelan intended to form a company named "Knukle, Inc." to sell apparel and accessories of the same name targeting mixed martial arts and extreme sports fans. At that time, Mr. Grooms set an appointment with Mr. Myers and Mr. Mercado to meet with them on or about July 15, 2008, to discuss further details of their services and the cost for those services. Between the date of that telephone call and their meeting, Mr. Grooms sent to Artillery Distribution Mr. Grooms' and Ms. Phelan's "Knukle, Inc.," "Knukle Inc" and "Knukle" designs to obtain a price quote and determine the level of their computer-design expertise.

22.     On or about July 9, 2008, Mr. Grooms and Ms. Phelan first contracted with Dreyson Solana, to develop a website for www.knukleinc.com. The total cost of developing that website was $1,500.00, which was paid by Mr. Grooms via personal check.

23.     On or about July 15, 2008, Mr. Grooms met with Mr. Myers and Mr. Mercado at Artillery Distribution's place of business (Mr. Myers' and Mr. Mercado's apartment). Mr. Grooms was pleased with their design enhancements and their price quote. At or about this same time, Mr. Grooms placed an order for business cards, hats, T-shirts and stickers with certain designs comprising the name "Knukle Inc" ("Knukle" was misspelled omitting a "c" with the second "k" turned backwards), and informed them that Mr. Grooms and Ms. Phelan needed that apparel for a motocross benefit event for recent fire victims in Crowley County, Colorado in early August 2008. At or about this same time, Mr. Grooms made a down payment on his Citibank credit card in the amount of $4,525 for the Artillery Distribution's work.

24.     On or about July 22, 2008, Ms. Phelan and Mr. Grooms, doing business as Knukle, Inc., opened a merchant services account with Wells Fargo (Account Number XXXXXX8779).

25.     On or about July 28, 2008, Mr. Grooms and Ms. Phelan received an invoice from Artillery Distribution made out to "Knukle, Inc." for their services aforementioned.

26.     On or about July 30, 2008, Mr. Grooms and Ms. Phelan created Facebook and MySpace pages for "Knukle Inc."

27.     On or about July 30 through August 3, 2008, Mr. Grooms and Ms. Phelan received new designs for "Knukle Inc" stickers and apparel from Artillery Distribution to be sold and donated at the Crowley County benefit event. The cost of these items was approximately $1,030.00, and Mr. Grooms paid for that via check.

28.     At or around this same time, Ms. Phelan made the first sale of "Knukle Inc" apparel in Southern California: two T-shirts to a friend of Ms. Phelan's for $40.00. In addition, Ms. Phelan, Mr. Grooms, Mr. Myers and Mr. Mercado attended a mixed martial arts event and the X-Games in Long Beach, where Ms. Phelan, Mr. Grooms, Mr. Myers and Mr. Mercado gave away promotional "Knukle Inc" apparel to event attendees. Additionally, at or around the same time, a friend of Mr. Grooms' and Ms. Phelan's stepfather, Jim Morley, attended a Crowley County, Colorado motocross benefit event, and they sold approximately eight to ten T-shirts for cash,  and a portion of the proceeds of those sales was donated to recent Colorado fire victims.

29.     On or about August 4, 2008, Mr. Grooms made a final payment of $1,050.00 on the amount still owing to Artillery Distribution for Mr. Myers' and Mr. Mercado's work on the "Knukle Inc" business cards, hats, shirts and stickers for the Crowley County, Colorado motocross benefit event.

30.     On or about August 7, 2008, Mr. Grooms and Ms. Phelan made their first on-line sale of "Knukle Inc" apparel through their website, www.knukleinc.com.

31.     From August 8 through 18, 2008, Ms. Phelan and Mr. Grooms returned to and stayed in Colorado, their state of residence, to attend the Rocky Ford Fair and Sinister Show-Off, a motorcycle stunt show. Mr. Grooms and Ms. Phelan paid $100.00 for a booth at these events and sold hundreds of "Knukle Inc" T-shirts there.

32.     On or about August 23, 2008, Mr. Grooms and Ms. Phelan made their second on-line sale of "Knukle Inc" apparel through their website, www.knukleinc.com.

33.     On or about September 2, 2008, Mr. Grooms and Ms. Phelan made their third on-line sale of "Knukle Inc" apparel through their website, www.knukleinc.com.

34.     At or around this same time, Mr. Grooms and Ms. Phelan placed an advertisement on www.craigslist.com seeking to find investors to help bring their vision for the brand "Knukle Inc" to fruition by attending larger motocross, mixed martial arts, and other extreme sporting events and venues.

35.     On or about September 9, 2008, Mr. Grooms was contacted via telephone for the first time by Ms. Legge who had seen Mr. Grooms' and Ms. Phelan's advertisement on www.craigslist.com. Ms. Legge informed Mr. Grooms at that time that she and her husband, Mr. Legge, worked in real estate, and that when she was younger she started a swimsuit line that was unsuccessful but that she was interested in getting back into the apparel business. Moreover, Ms. Legge stated that she was interested in Plaintiffs' company, their brand, and their business plan. Mr. Grooms and Ms. Legge agreed over the phone to set a formal meeting between themselves and Ms. Phelan and Mr. Legge on September 13, 2008. Between the time of this initial telephone conversation and their meeting on September 13, 2008, Mr. Grooms sent Ms. Legge his and Ms. Phelan's "Knukle Inc" designs via e-mail. At no time then or ever since, did Ms. Legge mention that she or Mr. Legge had first conceived the name "Knukle Inc" or a similar name for a company or a line of apparel and accessories targeting mixed martial arts and extreme sports fans.

36.     On or about September 13, 2008, Ms. Phelan and Mr. Grooms, Mr. Myers and Mr. Mercado met with Mr. and Ms. Legge at a restaurant in Dana Point, California and they discussed the details of the investment that Mr. Grooms and Ms. Phelan were seeking to further develop their business and the line of apparel and accessories branded, "Knukle Inc," Mr. Grooms and Ms. Phelan brought "Knukle Inc" apparel, designs, photographs, posters, and their business plan to the meeting. There, Mr. Grooms and Ms. Phelan informed Mr. and Ms. Legge that their brand, "Knukle Inc," was quickly gaining recognition with mixed martial arts and extreme sports fans, that they had already sold several hundred "Knukle Inc" T-shirts, that they were planning on forming a corporation of the same name in Colorado, Knukle One, and that they were seeking a significant investment to supply the demand that Mr. Grooms and Ms. Phelan believed was present in this industry. To become a part of that vision, Mr. Grooms and Ms. Phelan explained to Mr. and Ms. Legge that they were seeking an up-front investment of $115,000.00 for 50% ownership of the "Knukle, Inc." enterprise. Mr. and Ms. Legge orally agreed to those terms, and an oral contract was established by and between the parties on those terms. Mr. Grooms, Ms. Phelan, and Mr. and Ms. Legge agreed at that time that it would be Mr. Grooms' and Ms. Phelan's responsibility to deal with the designs, retailers, and events, and Mr. and Ms. Legge would supply the money and handle the finances of the company.

37.     Over the course of the next several days, Ms. Phelan and Mr. Grooms spoke with Ms. Legge several times at all hours of the day and night, and Mr. Grooms decided that it would be prudent to put together a written agreement that incorporated the terms of the Legge's investment.

38.     On or about September 16, 2008, after speaking with his father, Bob Grooms, and with his assistance, Mr. Grooms drafted an e-mail that described the terms of the Legge's investment as set forth above, an up-front investment of $115,000.00 for 50% ownership of the "Knukle, Inc." enterprise. Included therewith was a schedule of costs provided by and Mr. Myers and Mr. Mercado at Artillery Distribution that set forth in detail how the Legge's investment would be spent.

39.     At or around this same time, Mr. Legge began to establish independent contact with Mr. Myers of Artillery Distribution. They informed Mr. Grooms that they needed to contact Dreyson Solana, the website developer of the original www.knukleinc.com website, to change the website's webhost from Dreyson Solana to Bluehost in order to improve the www.knukleinc.com website and set up e-mail

1 | addresses for company employees. Unwittingly, Mr. Grooms agreed to the host change without knowing that

2 | the domain name was also transferred to Mr. Legge's name at the same time.

3 |     40.      On or about September 19, 2009, Plaintiffs are informed and believe and came to find out

4 | months later, that Mr. and Ms. Legge formed Knukle, Inc., a California corporation (also referred to herein

5 | as "Knukle Two"), without Mr. Grooms or Ms. Phelan's knowledge or consent.

6 |     41.      On or about September 23, 2009, Mr. Grooms, with the help of his father, prepared a

7 | formal written investment agreement comprising all of the terms in his e-mail to Mr. and Ms. Legge from

8 | September 16, 2009, and e-mailed the same to Mr. and Ms. Legge. In a telephone conversation that Mr.

9 | Grooms had with them at or around the same time, Mr. and Ms. Legge requested that a company bank

10 | account be formed in only their names. Mr. Grooms explained to them that any company bank account

11 | established should be in all of their names, including Mr. Grooms' and Ms. Phelan's names.

12 |     42.      In or around late September 2008, Mr. and Ms. Legge informed Mr. Grooms and Ms.

13 | Phelan that they were unwilling to sign the formal written investment agreement as drafted, and that they

14 | were further unwilling to invest all of the $115,000.00 up-front in contravention of the oral agreement

15 | formed between the parties on or about September 13, 2008. Instead, Mr. and Ms. Legge wanted to invest

16 | the $115,000.00 slowly and in installments as payments became due to see if Mr. Grooms' and Ms. Phelan's

17 | "Knukle, Inc." business enterprise was successful. In total, throughout the course of the next several months,

18 | before Ms. Phelan and Mr. Grooms were locked out of the www.knukleinc.com website and their business

19 | enterprise by Defendants, Mr. and Ms. Legge invested a total of $42,000.00 in "Knukle, Inc.," the enterprise

20 | and the line of apparel and accessories. Plaintiffs have invested a total of approximately $20,000.00 in

21 | "Knukle, Inc.," the enterprise and its line of apparel and accessories, to date.

22 |     43.      On or about October 2, 2009, Mr. Myers and Mr. Mercado of Artillery Distribution assisted

23 | Mr. Grooms and Ms. Phelan to sign up for a booth at the Action Sports Retailers trade show scheduled for

24 | January 22-24, 2009 (hereinafter, the "ASR trade show"). Held annually in Downtown San Diego, California

25 | in late January, the ASR trade show touts itself as the "most powerful buying event in the action sports

26 | industry." Mr. Grooms' name was on the ASR trade show application and Mr. and Ms. Legge paid the fee

27 | for the booth.

28 |

44.     In or around October 2008, Ms. Phelan, Mr. Grooms, Mr. Myers, Mr. Mercado, and Mr. and Ms. Legge worked together preparing for the ASR trade show. Upon information and belief, at or around this same time, Mr. Legge became increasingly closer with Mr. Myers and Mr. Mercado, holding meetings about the upcoming event, website, samples and plans for "Knukle, Inc.," the company and the brand. When Mr. Grooms learned of these meetings, Mr. Grooms informed Mr. Myers and Mr. Legge that his and Ms. Phelan's involvement in their meetings was vital and necessary. Throughout this period, Mr. Grooms and Ms. Phelan retained the power and authority to create, approve and/or revise all "Knukle, Inc.," "Knukle Inc" and "Knukle" designs generated in association with Artillery Distribution and paid for by Mr. and Ms. Legge.

45.     On or about October 27, 2009, Artillery Distribution began working on redesigning what Mr. Grooms and Ms. Phelan thought was going to be their new www.knukleinc.com website for a scheduled launch date by January 1, 2009. Plaintiffs are informed and believe that Mr. and Ms. Legge paid Artillery Distribution for their website design services.

46.     On or about November 5, 2008, Ms. Legge told Mr. Grooms that she and Mr. Legge had opened a merchant account. Mr. Grooms understood that they would have needed an Employer Identification Number (EIN) to open that account, and when he asked her how they obtained an EIN, Ms. Legge explained to Mr. Grooms that she was only thinking about opening up a merchant account. Mr. Grooms told Ms. Phelan about this exchange, and thereafter, Mr. Grooms and Ms. Phelan started becoming concerned about what acts Mr. and Ms. Legge were taking without their knowledge or consent.

47.     In or around the middle of November 2008, Ms. Phelan's family friend, David Chavez of Pro Sports MVP, a Colorado company, arranged a poster photo shoot for the ASR trade show with Joe Lauzon, a well-known mixed martial artist. However, after one conversation with Mr. Legge, David Chavez withdrew his offer to secure Joe Lauzon citing personality differences with Mr. Legge. As a substitute, Artillery Distribution set up a photo shoot with a model, Queen Esther, at an Oceanside classic car repair shop. The photos taken that day were to be incorporated into the new www.knukleinc.com website under development by Artillery Distribution and promotional materials for the ASR trade show. Ms. Phelan paid $200.00 to Queen Esther for the photo shoot.

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF          11

48.     At or around this same time, Mr. Grooms' and Ms. Phelan's relationship with Mr. and Ms. Legge began to deteriorate. On or about November 18, 2009, Mr. Grooms placed a new order with Artillery Distribution for 600 "Knukle Inc" and "Knukle" T-shirts for $5,000.00 and Mr. Grooms paid for the same with his credit card. When Mr. Grooms received the charge for those T-shirts, the charge was for $6,000.00 and from a company whom Mr. Grooms had never heard of, so he cancelled the payment. Mr. Grooms and Ms. Phelan received those T-shirts on or about December 17, 2009, and Mr. Myers and Mr. Mercado agreed that although Mr. Grooms had not paid for the shirts for the reasons set forth above, they would not require payment as they suggested something could be worked out in the future.

49.     On or about November 28, 2009, Mr. Grooms formed Knukle, Inc., a Colorado corporation.

50.     On or about December 2, 2009, Artillery Distribution sent to Mr. Grooms and Ms. Phelan a mock-up of the posters from the Queen Esther photo shoot to be used for the ASR trade show.

51.     On or about December 9, 2009, Ms. Legge e-mailed Mr. Grooms a list of topics to be discussed at a "Knukle, Inc." meeting scheduled on December 12, 2008. At or around this same time, Mr. Grooms informed Ms. Legge that it was acceptable, as per her request, to use Mr. and Ms. Legge's business address in California as the company's "California office" because Mr. Grooms believed it was important for the "Knukle, Inc." image to have a local address on the company's business cards. However, Mr. Grooms also informed Ms. Legge that the corporate headquarters would need to remain in Colorado as the corporation was formed there.

52.     On or about December 10, 2008, Artillery Distribution sent Mr. Grooms and Ms. Phelan the designs for the promotional flyers that would be distributed at the ASR trade show.

53.     At or around this same time, and for the month previous, Ms. Phelan and Mr. Grooms were working on securing purchase orders for "Knukle Inc" and "Knukle" merchandise in advance from retailers who would be attending the ASR trade show.

54.     On or about December 12, 2008, Mr. Grooms and Ms. Phelan attended a meeting at Mr. and Ms. Legge's office in Orange County, with Mr. Myers, Mr. Mercado, and Cory Santaniello from Artillery Distribution, Mr. Legge, Ms. Legge (via telephone), and two potential investors that Mr. Legge had

1   brought along with him who Plaintiffs are informed and believe were friends of Mr. Legge from New York.

2   Plaintiffs are informed and believe that the purpose of this meeting was to make last minute preparations for

3   the ASR trade show before Mr. Grooms and Ms. Phelan left for the holidays back home to Colorado. Mr.

4   Grooms and Ms. Phelan brought sample apparel and stickers to the meeting. Artillery Distribution brought

5   the "Knukle, Inc." apparel catalog and the Queen Esther posters. At the meeting, everyone agreed that

6   Artillery Distribution would take on the responsibility of setting up hotel rooms for the ASR trade show, Mr.

7   Grooms and Ms. Phelan and Artillery Distribution would set up a sample floor plan for the "Knukle, Inc."

8   booth, and Mr. Grooms and Ms. Phelan would continue contacting retailers and mailing to them "Knukle,

9   Inc." flyers and catalogs in advance of the ASR trade show. Mr. Grooms, Ms. Phelan and Artillery

10   Distribution were to work the booth at the ASR trade show, and Mr. and Ms. Legge were to offer financial

11   support for the same. Plaintiffs are informed and believe that the meeting went well, and that all attendees

12   left excited about the upcoming ASR trade show.

13        55.     On or about the morning of December 16, 2008, Mr. Grooms received a phone call from

14   Ms. Legge requesting that Ms. Phelan and Mr. Grooms assign to her, individually, their interests in the

15   "Knukle" trademark. Further, she requested that Ms. Phelan and Mr. Grooms agree to make Mr. and Ms.

16   Legge's Orange County office the site of the company headquarters. Mr. Grooms explained once more to

17   Ms. Legge that he and Ms. Phelan wanted to keep the company headquarters in Colorado, and that they

18   would not transfer their rights to the "Knukle" trademark to Ms. Legge, and her alone. Mr. Grooms further

19   informed Ms. Legge that he and Ms. Phelan and were leaving for Colorado for Christmas vacation shortly,

20   he wished her a happy holiday, and he agreed to discuss these items in more detail with Ms. Legge upon

21   their return to California in early January 2009.

22        56.     On or about the early evening of December 16, 2008, Mr. Grooms received a telephone call

23   from Mr. Myers and Mr. Mercado from Artillery Distribution, and they informed him that Mr. and Ms.

24   Legge "were going to go behind [Mr. Grooms' and Ms. Phelan's] backs," start their own company around a

25   line of apparel and accessories targeting mixed martial arts and extreme sports fans branded "Knukle Inc"

26   (with the second "k" turned forwards), and go to the ASR trade show without Mr. Grooms and Ms. Phelan

27   unless they were willing to fully assign their ownership rights to the trademark "Knukle" to the Legges. Mr.

28

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF    13

1   Myers asked Mr. Grooms what would happen to the "Knukle, Inc." brand and company if the Legges left,

2   and he further asked how Mr. Grooms and Ms. Phelan would treat the Legges if, in fact, they did leave. Mr.

3   Grooms explained to Mr. Myers that he and Ms. Phelan would not agree to assign their rights to the

4   "Knukle" trademark to the Legges, that the Legges could not just steal the "Knukle, Inc." brand, enterprise

5   and its property, and that if the Legges decided to leave, Mr. Grooms and Ms. Phelan would secure enough

6   funds to make it through the ASR trade show, and they would do their best to resolve any outstanding issues

7   with the Legges fairly and amicably.

8       57.     Immediately thereafter, Ms. Phelan phoned her father, Tom Phelan, who suggested a

9   potential solution to this problem: giving Mr. and Ms. Legge 49% of the company so that Mr. Grooms and

10  Ms. Phelan could retain control of the brand and enterprise that they started with ideas that they developed

11  because they feared it was in danger of being stolen from them.

12      58.     On or about the late evening December 16, 2008, Mr. Grooms phoned Mr. Legge and

13  explained to him that he received a disturbing phone call from Artillery Distribution the contents of which

14  are set forth above. Mr. Grooms explained to Mr. Legge that if he and Ms. Legge wanted to leave the

15  company and start their own apparel company, then they could not use the "Knukle, Inc.," "Knukle Inc" or

16  "Knukle" brand or company names or the designs that were the company's property.   Mr. Legge replied

17  vulgarly, "Fuck you. You can't stop me. I'll do what I want." Mr. Grooms replied that Ms. Phelan and he

18  had no intention of signing over the "Knukle" trademark to Mr. or Ms. Legge, and that if the Legges were to

19  remain part of the company, the only way that would be acceptable was if the company was owned and

20  controlled by Mr. Grooms and Ms. Phelan with a 51%/49% ownership structure. Mr. Legge replied that he

21  would not accept 49% ownership of the company, that the company was his, and that he was either going to

22  own 50% of the company or 100% of the company. That conversation ended abruptly.

23      59.     Immediately thereafter, Ms. Phelan telephoned Ms. Legge, requested that he calm down

24  and discuss this issue in a professional manner. Ms. Phelan explained to Mr. Legge that it was unacceptable

25  to her and Mr. Grooms that he and Ms. Legge try to take the "Knukle, Inc.," "Knukle Inc" or "Knukle" brand

26  or company names, that she and Mr. Grooms only wanted 51% of the company to steer the vision of the

27  company but that they would still be willing to split the profits in half with Mr. and Ms. Legge. Mr. Legge

28

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF        14

replied that he was going to sell Mr. Grooms' and Ms. Phelan's shares to someone else and have them removed from ownership and control of the company. Ms. Phelan next asked Mr. Legge whether buying him and Ms. Legge out was an option that he would consider. Mr. Legge replied Mr. Grooms and Ms. Phelan could buy him and Ms. Legge out by refunding their entire investment plus 20%, and that Mr. Grooms and Ms. Phelan had until the next day to do the same. John Legge was vulgar, rude, and intimidating on this phone call, as well.

60.    On or about the morning of December 17, 2009, Ms. Phelan and her stepfather, Jim Morley, had a conversation regarding the contents of her exchange with Mr. Legge the night before. Immediately thereafter, Jim Morley requested that Ms. Phelan allow him to call Mr. Legge on her behalf to negotiate with Mr. Legge, and Plaintiffs are informed and believe Jim Morley did so contact Mr. Legge. Plaintiffs are informed and believe Jim Morley offered to buy out Mr. and Ms. Legge in that telephone call by repaying all of the money that the Legges had spent on the company through that point plus a percentage that was less than 20%. Plaintiffs are informed and believe that Mr. Legge responded that a "buy out" was no longer acceptable, and that he would take 50% ownership and control of the company or start Knukle, Inc. with a "c", or a second "k" that was turned forwards, and that no one could stop him.

61.    On or about December 17, 2008, Mr. Grooms spoke and corresponded via e-mail with Mr. Myers regarding the developments of the telephone calls with Mr. Legge that morning and the day before. Mr. Grooms asked Mr. Myers not to release any "Knukle, Inc." designs or merchandise for the ASR trade show until Mr. Grooms and Ms. Phelan had resolved their issues with Mr. and Ms. Legge, and Mr. Myers agreed.

62.    On or about December 21, 2008, Mr. Grooms telephoned Abstrakt Printing, the company with whom Artillery Distribution worked to screenprint "Knukle, Inc." merchandise. Mr. Grooms asked Abstrakt Printing not to release any of the "Knukle, Inc." merchandise for the ASR trade show until Mr. Grooms and Ms. Phelan had resolved their issues with Mr. and Ms. Legge, and an Abstrakt representative agreed.

63.    On or about December 26, 2008, Mr. Grooms first learned by searching the United States Patent and Trademark Office's website that, on December 18, 2008, Knukle Two filed a federal "actual use"

1    trademark application for the mark, "Knukle Inc", with the second "k" turned forwards under International

2    Class 042, for graphics arts design, namely creating designs for use as a decorative or ornamental features on

3    products and packaging. The federal trademark application was assigned Serial Number 77636449 and is

4    currently pending registration.  Plaintiffs are informed and believe that Knukle Two misrepresented to the

5    USPTO that its first use of the "Knukle Inc" mark was on June 1, 2008. Plaintiffs are informed and believe

6    that Mr. and Ms. Legge were aware of Mr. Grooms' and Ms. Phelan's prior federal trademark application

7    filing for the "Knukle Inc" word mark on June 12, 2008 prior to their filing of their trademark application for

8    the mark "Knukle Inc" on December 18, 2008.  The "Knukle Inc" mark is essentially the same as Plaintiffs'

9    federal trademark pending with the USPTO with the exception of turning the second "k" forward and adding

10   the word, "Inc". Plaintiffs used the same "Knukle Inc" mark in commerce prior to Defendants' trademark

11   filing thereby securing common law trademark rights to the mark, "Knukle Inc." Plaintiffs are informed and

12   believe that on March 4, 2009, Defendant Knukle Two amended its application, Serial Number 77636449,

13   by changing the filing basis to "intent to use."

14          64.     Immediately thereafter, and through the present, Ms. Phelan and Mr. Grooms terminated all

15   further contact with Mr. and Ms. Legge and Artillery Distribution so as to give them time to consult with an

16   attorney to determine their future course of action.

17          65.     On or about January 7, 2009, Mr. Grooms first learned by searching the United States

18   Patent and Trademark Office's website that that on January 5, 2009, Knukle Two filed a second federal

19   "actual use" trademark application for the mark, "Knukle," with the second "k" turned forwards under

20   International Class 025, for goods and services including men's and woman's clothing, footwear and

21   accessories. The federal trademark application was assigned Serial Number 77643673 and is currently

22   pending registration. Plaintiffs are informed and believe that Knukle Two misrepresented to the USPTO that

23   its first use of the "Knukle" mark was on June 1, 2008. Plaintiffs are informed and believe that Mr. and Ms.

24   Legge were aware of Mr. Grooms' and Ms. Phelan's prior federal trademark application filing for the

25   "Knukle" mark on June 12, 2008 prior to their filing of their trademark application for the "Knukle" mark

26   application on January 5, 2009. The "Knukle" mark is essentially the same as Plaintiffs' federal trademark

27   pending with the USPTO with the exception of turning the second "k" forward. Defendants filed their

28

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF       16

1   application under the same International Class 025 including clothing, footwear and accessories that

2   Plaintiffs' trademark application is filed under. Plaintiffs already used the same "Knukle" mark in commerce

3   prior to Defendants' trademark filing thereby securing common law trademark rights to the mark, "Knukle."

4   Plaintiffs are informed and believe that on March 4, 2009, Defendant Knukle Two amended its application

5   Serial Number 77643673 by changing the filing basis to "intent to use."

6         66.     On or about January 22-24, 2008, Plaintiffs are informed and believe that Knukle Two, and

7   Mr. and Ms. Legge sent Mr. Myers and Mr. Mercado to work the ASR trade show to procure orders for the

8   sale of "Knukle, Inc.," "Knukle Inc" and "Knukle" designs and merchandise that: 1) Ms. Phelan and Mr.

9   Grooms developed before they first met Artillery Distribution; 2) Ms. Phelan and Mr. Grooms developed

10  collaboratively with Artillery Distribution before they first met the Legges; or 3) Ms. Phelan and Mr.

11  Grooms developed collaboratively with Artillery Distribution after they met the Legges. Plaintiffs are

12  informed and believe that this merchandise was obtained by Mr. and Ms. Legge from Artillery Distribution

13  and Abstrakt Printing. Plaintiffs did not attend the ASR trade show because Artillery Distribution released

14  all of the "Knukle Inc." merchandise generated for the ASR trade show to Mr. and Ms. Legge. In addition,

15  although Mr. Grooms' name was on the application for the ASR trade show, he was informed by a trade

16  show representative that only the Legges had the right to attend the trade show because they paid for the

17  booth.

18        67.     On or about January 29, 2009, Mr. Grooms first received a MySpace post from a

19  representative from a retailer named "Skin" based out of El Cajon, California explaining how nice it was to

20  meet "Knukle, Inc." representatives during the ASR trade show, and that Skin had billboard space for

21  "Knukle Inc" designs near their store that had freeway frontage.

22        68.     On or about January 30, 2009, Mr. Grooms first noticed that a new website had been posted

23  at www.knukleinc.com, the domain name that he originally purchased in May 2008. The website comprised

24  photos from the "Knukle, Inc." photo shoot with Queen Esther (only in the group picture from the shoot, Mr.

25  Grooms and Ms. Phelan had been digitally removed), pictures from the ASR trade show, and all of the

26  designs for sale that Mr. Grooms and Ms. Phelan developed with and without the assistance of Artillery

27

28

1   Distribution identically with one slight variation: the second "k" in Knuckle, Inc. was turned forwards

2   (however, on some of the tags of the women's apparel, the second "k" remains turned backwards).

3        69.     At or around this same time, Mr. Grooms started trying to log into the website at

4   www.knukleinc.com as its owner but could not do so. Mr. Grooms immediately contacted Bluehost and a

5   representative informed him that the website was now held in Mr. Legge's name. Mr. Grooms thereafter

6   contacted www.1and1.com and a representative explained to him that the domain name was also held in Mr.

7   Legge's name, and as such, Mr. Grooms could not log into the www.knukleinc.com website as an owner

8   without passcodes and authorizations that only Mr. Legge held. Thereafter, Mr. Grooms purchased the

9   domain name www.knukleinccloting.com and Dreyson Solana agreed to put up the old website

10  www.knukleinc.com website and host the same for him and Ms. Phelan. Plaintiffs have been using that

11  website to sell "Knukle, Inc.," "Knukle Inc" and "Knukle" apparel since that time.

12       70.     At or around this same time, Mr. Grooms first noticed that the Knukle, Inc. MySpace and

13  Facebook pages that he created with Ms. Phelan were starting to receive postings that were defamatory, that

14  called Mr. Grooms and Ms. Phelan "imposters," and contained information only someone with intimate

15  details of their ordeal with Mr. and Ms. Legge could know.

16       71.     On or about February 5, 2009, Mr. Grooms received an e-mail from a representative of a

17  retailer based in Bakersfield named, "Fatal Impact," who stated that he was excited to receive his shipment

18  of new "Knukle, Inc." apparel. Mr. Grooms or Ms. Phelan had never received an order from Fatal Impact.

19       72.     On or about February 10, 2009, Mr. Grooms placed a telephone call with a screen printer

20  based out of Colorado, Don Petro of Big League Graphics, with whom Mr. Grooms had a previous

21  relationship. Mr. Grooms asked Don Petro to place a small order for him and Ms. Phelan for some

22  sweatshirts to meet the demands that Ms. Phelan and Mr. Grooms received recently. On Mr. Grooms' and

23  Ms. Phelan's behalf, Don Petro called Independent Trading Company, a blank sweatshirt wholesaler located

24  in San Clemente, and tried to place that order but was informed that an order from "Knukle, Inc." had

25  already been made for a design named "Knukle Up" that was developed by a tattoo-artist friend of Artillery

26  Distribution's before Mr. Grooms and Ms. Phelan were locked out of the company by Defendants. The

27  Independent Trading Company representative informed Don Petro that an order for more than $200,000

28

      COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF    18

1  worth of blank sweatshirts had been made by "Knukle, Inc." the week before which Plaintiffs are informed

2  and believe will be printed in China and sent back to the United States in early March 2009, and are the

3  direct result of orders received at the ASR trade show.

4        73.     On or about February 21, 2008, while searching on www.craigslist.com, Mr. Grooms found

5  an advertisement placed by Ms. Legge seeking investors for Knukle Two to help fill orders that Plaintiffs are

6  informed and believe Knukle Two received from the ASR trade show.

7        74.     On or about March 8, 2009, Plaintiffs received a MySpace posting from "Fatal Impact"

8  requesting a status update on their shipment of "Knukle, Inc." merchandise.

9

**FIRST CLAIM FOR RELIEF**
**Federal Unfair Competition and False Designation of Origin**
**Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a)**
**(Against All Defendants)**

10

11

12        75.     Plaintiffs repeat and re-allege the allegation in paragraphs 1 through 74 above as if fully set

13  forth herein.

14        76.     Plaintiffs own valid trademarks and/or the exclusive rights to valid trademarks that are

15  entitled to protection under the Lanham Act.

16        77.     Defendants' unauthorized use of the "Knukle, Inc.," "Knukle Inc" and "Knukle" marks has

17  had a substantial effect on interstate commerce, and constitutes false advertising, false designation of origin,

18  and false description and/or representation of fact that is likely to cause confusion concerning the affiliation,

19  connection, or association of "Knukle, Inc.," "Knukle Inc" and "Knukle" and Defendants, and/or concerning

20  Plaintiffs' sponsorship or approval of Defendants' products, and/or concerning Defendants' commercial

21  activities concerning Defendants' products.

22        78.     Defendants' unlawful use of the "Knukle, Inc.," "Knukle Inc" and "Knukle" marks in

23  interstate commerce constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15

24  U.S.C. §1125(a).

25        79.     Upon information and belief, Defendants, in engaging in the conduct described herein,

26  willfully intended to trade on the reputation of Plaintiffs and/or the "Knukle, Inc.," "Knukle Inc" and

27  "Knukle" marks, and to cause injury to Plaintiffs.

28

80.      As a direct and proximate result of Defendants' unlawful acts as set forth above, including the unauthorized use of the "Knukle, Inc.," "Knukle Inc" and "Knukle" marks, Plaintiffs have suffered and will continue to suffer injury to their business, goodwill, and property.

81.      Plaintiffs are entitled, pursuant to 15 U.S.C. §1117, to recover from Defendants the damages they have sustained and will sustain as a result of Defendants' wrongful conduct as alleged herein. Plaintiffs are further entitled to recover from Defendants the gains, profits and advantages that Defendants have obtained as a result of the wrongful conduct alleged herein. Plaintiffs, at present, are unable to ascertain the full extent of their damages, or the gains, profits, and advantages that Defendants have obtained by reason of the wrongful conduct described herein.

82.      Plaintiffs are entitled, pursuant to 15 U.S.C. §1116, to an injunction restraining Defendants, their officers, agents and employees, and all persons acting in concert with them, from engaging in any further such acts of infringement in violation of the Lanham Act.

83.      Plaintiffs have no adequate remedy at law.  Unless Defendants are temporarily, preliminarily and permanently enjoined from committing these unlawful acts as set forth above, including the unauthorized use of the "Knukle, Inc.," "Knukle Inc" and "Knukle" marks in commerce, Plaintiffs will continue to suffer irreparable harm.

**SECOND CLAIM FOR RELIEF**
**Cybersquatting**
**Section 43(a) of the Lanham Act, 15 U.S.C. §1125(d)**
(Against All Defendants)

84.      Plaintiffs repeat and re-allege the allegation in paragraphs 1 through 83 above as though fully set forth herein.

85.      Defendants' registration and use of the domain name www.knukleinc.com constitutes a bad faith intent to profit from the Plaintiffs' "Knukle, Inc.," "Knukle Inc" and Knukle marks within the meaning of 15 U.S.C. § 1125(d).

86.      Plaintiffs have no adequate remedy at law. Unless Defendants are temporarily, preliminarily and permanently enjoined from committing these unlawful acts as set forth above, including the unauthorized use of the infringing domain name www.knukleinc.com, Plaintiffs will continue to suffer irreparable harm.

87.     Defendants' wrongful activities are and have been willful.

88.     Plaintiffs are entitled to the maximum statutory damages, pursuant to 15 U.S.C. § 1117(d), in the amount of $100,000, for each act of Defendants' cybersquatting.

**THIRD CLAIM FOR RELIEF**
**Unfair Competition and False Designation of Origin**
**California Business & Professions Code § 17200 and 17500**

**(Against All Defendants)**

89.     Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 88 above as if fully set forth herein.

90.     Defendants' unlawful acts as set forth above, including the unauthorized use of the "Knukle, Inc.," "Knukle Inc" and "Knukle" marks, has had a substantial effect on commerce, constituting unlawful, unfair, and fraudulent business practices and unfair, deceptive, untrue, and misleading advertising in violation of Sections 17200 and 17500, et seq., of the California Business and Professions Code.

91.     Upon information and belief, Defendants, in engaging in the conduct described herein, willfully intended to trade on the reputation of Plaintiffs and/or the "Knukle, Inc.," "Knukle Inc" and "Knukle" marks, and to cause injury to Plaintiffs.

92.     As a direct and proximate result of Defendants' unlawful acts as set forth above, including the unauthorized use of the "Knukle, Inc.," "Knukle Inc" and "Knukle" marks, Plaintiffs have suffered and will continue to suffer injury to their business, goodwill, and property.

93.     Plaintiffs are entitled to recover from Defendants the damages they have sustained and will sustain as a result of Defendants' wrongful conduct as alleged herein. Plaintiffs, at present, are unable to ascertain the full extent of its damages suffered by reason of the wrongful conduct described herein.

94.     Plaintiffs are entitled, pursuant to California Business and Professions Code §§ 17200 and 17500, to an injunction restraining Defendants, their officers, agents and employees, and all persons acting in concert with them, from engaging in any further such acts of infringement in violation of the California Business and Professions Code.

95.     Plaintiffs have no adequate remedy at law.  Unless Defendants are temporarily, preliminarily and permanently enjoined from committing these unlawful acts as set forth above, including

1    the unauthorized use of the "Knukle, Inc.," "Knukle Inc" and "Knukle" marks, Plaintiffs will continue to

2    suffer irreparable harm.

3         96.    Upon information and belief, Defendants have acted intentionally and despicably with

4    oppression, fraud and malice toward Plaintiffs.  Plaintiffs, therefore, are entitled to an award of punitive

5    damages for the sake of example and by way of punishing Defendants pursuant to California Civil Code §

6    3294.

7                              **FOURTH CLAIM FOR RELIEF**

8                                  **Unfair Competition**
                                  **California Common Law**
9                                  **(Against All Defendants)**

10        97.    Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 96 above as if fully

11   set forth herein.

12        98.    Defendants' promotion, distribution, and sale of their products using the "Knukle, Inc.,"

13   "Knukle Inc" and "Knukle" marks have caused confusion and mistake and is likely to continue to cause

14   confusion and mistake, and to deceive the public into believing that Defendants' products originate with, or

15   are associated with and/or authorized by Plaintiffs.

16        99.    Defendants' unlawful use of the "Knukle, Inc.," "Knukle Inc" and "Knukle" marks has had

17   a substantial effect on commerce and constitutes unfair competition in violation of the California common

18   law.

19        100.   Upon information and belief, Defendants, in engaging in the conduct described herein,

20   willfully intended to trade on the reputation of Plaintiffs and/or the "Knukle, Inc.," "Knukle Inc" and

21   "Knukle" marks, and to cause injury to Plaintiffs.

22        101.   As a direct and proximate result of Defendants' unlawful acts as set forth above, including

23   the unauthorized use of the "Knukle, Inc.," "Knukle Inc" and "Knukle" marks, Plaintiffs have suffered and

24   will continue to suffer injury to their business, goodwill, and property in an amount not presently known.

25        102.   Plaintiffs are entitled to recover from Defendants the damages they have sustained and will

26   sustain as a result of Defendants' wrongful conduct as alleged herein.  Plaintiffs, at present, are unable to

27

28
          COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF      22

1  ascertain the full extent of their damages suffered by reason of Defendants' wrongful conduct described

2  herein.

3        103.     Plaintiffs are entitled, pursuant to this Court's equitable powers, to an injunction restraining

4  Defendants, their officers, agents and employees, and all persons acting in concert with them, from engaging

5  in any further such acts of unfair competition in violation of the California common law.

6        104.     Plaintiffs have no adequate remedy at law.   Unless Defendants are temporarily,

7  preliminarily and permanently enjoined from committing these unlawful acts as set forth above, including

8  the unauthorized use of the "Knukle, Inc.," "Knukle Inc" and "Knukle" marks, Plaintiffs will continue to

9  suffer irreparable harm.

10        105.     Upon information and belief, Defendants have acted intentionally and despicably with

11  oppression, fraud and malice toward Plaintiffs.  Plaintiffs, therefore, are entitled to an award of punitive

12  damages for the sake of example and by way of punishing Defendants pursuant to California Civil Code §

13  3294.

**FIFTH CLAIM FOR RELIEF**
<u>**Trademark and Trade Name Infringement**</u>
<u>**California Common Law**</u>
**(Against All Defendants)**

17        106.     Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 105 above as if fully

18  set forth herein.

19        107.     Defendants' unlawful use of the "Knukle, Inc.," "Knukle Inc" and "Knukle" marks as

20  alleged herein constitutes trademark and trade name infringement in violation of California Common Law.

21        108.     Upon information and belief, Defendants, in engaging in the conduct described herein,

22  willfully intended to trade on the reputation of Plaintiffs and/or the "Knukle, Inc.,""Knukle Inc" and

23  "Knukle" marks, and to cause injury to Plaintiffs.

24        109.     As a direct and proximate result of Defendants' unlawful acts as set forth above, including

25  the unauthorized use of the "Knukle, Inc.," "Knukle Inc" and "Knukle" marks, Plaintiffs have suffered and

26  will continue to suffer injury to their business, goodwill, and property in an amount not presently known.

27

28

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF    23

110.    Plaintiffs are entitled to recover from Defendants the damages they have sustained and will sustain as a result of Defendants' wrongful conduct as alleged herein.  Plaintiffs, at present, are unable to ascertain the full extent of their damages suffered by reason of Defendants' wrongful conduct described herein.

111.    Plaintiffs are entitled, pursuant to this Court's equitable powers, to an injunction restraining Defendants, their officers, agents and employees, and all persons acting in concert with them, from engaging in any further such acts of unfair competition in violation of the California Common Law.

112.    Plaintiffs have no adequate remedy at law.  Unless Defendants are temporarily, preliminarily and permanently enjoined from committing these unlawful acts as set forth above, including the unauthorized use of the "Knukle, Inc.," "Knukle Inc" and "Knukle" marks, Plaintiffs will continue to suffer irreparable harm.

113.    Upon information and belief, Defendants have acted intentionally and despicably with oppression, fraud and malice toward Plaintiffs.  Plaintiffs, therefore, are entitled to an award of punitive damages for the sake of example and by way of punishing Defendants pursuant to California Civil Code § 3294.

### SIXTH CLAIM FOR RELIEF
#### Conversion
#### California Common Law
#### (Against All Defendants)

114.    Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 113 above as if fully set forth herein.

115.    Starting from the date Plaintiffs were locked out of the company as alleged above, Defendants have been and are currently wrongfully in possession of Plaintiffs' ascertainable property, including but not limited to, a certain sum of money earned from the sale of "Knukle, Inc." merchandise, certain accounts receivable from the sale of "Knukle, Inc." merchandise, certain purchase orders for the sale of "Knukle, Inc." merchandise, certain "Knukle, Inc." merchandise, promotional materials, and designs therefor, the www.knukleinc.com website and designs and content therefor, certain "Knukle, Inc." email accounts and correspondence from third parties, and other personal property to be proven at trial. Defendants have refused to return this personal property.

116.    Plaintiffs are presently entitled to return of the property converted by Defendants, and have suffered damages as alleged herein.

117.    Plaintiffs are informed and believe, and on that basis allege, that Defendants' wrongful acts will continue to cause injury to Plaintiffs and that such injury will continue unless enjoined and restrained by this Court.

118.    Upon information and belief, Defendants have acted intentionally and despicably with oppression, fraud and malice toward Plaintiffs.  Plaintiffs, therefore, are entitled to an award of punitive damages for the sake of example and by way of punishing Defendants pursuant to California Civil Code § 3294.

**SEVENTH CLAIM FOR RELIEF**
**<u>Fraud</u>**
**<u>California Common Law</u>**
**(Against All Defendants)**

119.    Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 118 above as if fully set forth herein.

120.    Upon information and belief, it is alleged that Defendants made misrepresentations and/or omissions of material facts to Mr. Grooms and Ms. Phelan as described above in order to obtain and retain ownership and control of Knukle One and the property of Plaintiffs, including but not limited to, a certain sum of money earned from the sale of "Knukle, Inc." merchandise, certain customers and accounts receivable from the sale of "Knukle, Inc." merchandise, certain purchase orders for the sale of "Knukle, Inc." merchandise,  the "Knukle, Inc." trade name, www.knukleinc.com website, the "Knukle, Inc.," "Knukle Inc" and "Knukle" trademarks, "Knukle, Inc." merchandise, promotional materials and designs therefor.

121.    Upon information and belief, it is alleged that Defendants intended or had reason to expect that Plaintiffs would rely upon such material misrepresentations and/or omissions set forth above.

122.    Upon information and belief, it is alleged that Defendants knew that such material misrepresentations and/or omissions were false or acted in reckless disregard of their falsity at the time such misrepresentations and/or omissions were made.

123.     Upon information and belief, it is alleged that Defendants had the intent to deceive and made such material misrepresentations and/or omissions for the purposes of inducing Plaintiffs to rely upon them or were reckless in making such misrepresentations and omissions.

124.     Upon information and belief, it is alleged that each of the material misrepresentations and omissions concerned a then existing fact, and each of these misrepresentations and/or omissions was false.

125.     Plaintiffs did not know that the material misrepresentations or omissions were false at the time such misrepresentations and/or omissions were made.

126.     As a direct and proximate result of Defendants' misrepresentations and/or omissions, Plaintiffs sustained damages in an amount to be proven at trial.

127.     Plaintiffs are informed and believe, and on that basis allege, that Defendants' wrongful acts will continue to cause injury to Plaintiffs and that such injury will continue unless enjoined and restrained by this Court.

128.     Upon information and belief, Defendants have acted intentionally and despicably with oppression, fraud and malice toward Plaintiffs.  Plaintiffs, therefore, are entitled to an award of punitive damages for the sake of example and by way of punishing Defendants pursuant to California Civil Code § 3294.

## EIGHTH CLAIM FOR RELIEF
### Intentional Interference with Prospective Business Advantage
### California Common Law
### (Against All Defendants)

129.     Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 128 above as if fully set forth herein.

130.     By engaging in the conduct alleged above, Defendants intentionally interfered with Plaintiffs' relations with potential clients, sponsors and supporters of the "Knukle, Inc." concept and enterprise and converted Plaintiffs' registered domain, www.knukleinc.com, to themselves.

131.     Defendants knew, or should have known, that their conduct as alleged herein was likely to disrupt Plaintiffs' economic relationships and such conduct did in fact disrupt these relationships.

132.     Defendants' conduct was based upon false and fraudulent representations to Plaintiffs and breaches of their ethical, contractual, professional and common law duties to them. As such, Defendants' conduct was independently wrongful. As a direct and proximate cause of Defendants' actions, Plaintiffs were damaged in an amount to be proven at trial but believe to be well in excess of jurisdictional requirements.

133.     Plaintiffs are informed and believe, and on that basis allege, that Defendants' wrongful acts will continue to cause injury to Plaintiffs and that such injury will continue unless enjoined and restrained by this Court.

134.     Upon information and belief, Defendants have acted intentionally and despicably with oppression, fraud and malice toward Plaintiffs. Plaintiffs, therefore, are entitled to an award of punitive damages for the sake of example and by way of punishing Defendants pursuant to California Civil Code § 3294.

## NINTH CLAIM FOR RELIEF
### Intentional Interference with Economic Relationships
### California Common Law
### (Against All Defendants)

135.     Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 134 above as if fully set forth herein.

136.     There exists and existed at all times relevant herein actual economic relationships between Plaintiffs and their customers, designers, manufacturers, retailers, and other supporters, evidenced by actual contractual agreements and course of conducting and dealing between Plaintiffs and these individuals or entities. Said economic relationships contain an economic benefit to Plaintiffs.

137.     Plaintiffs are informed and believe, and on that basis allege, that Defendants knew and know of the economic relationships described herein that existed and exist between Plaintiffs and the aforementioned individuals or entities. Plaintiffs are further informed and believe, and on that basis allege, that Defendants knowingly, fraudulently, intentionally and tortuously interfered with Plaintiffs' economic relationships with these individuals or entities as described herein by using Plaintiffs' property and registered

1  domain, www.knukleinc.com, to attempt to persuade Plaintiffs' former customers and supporters to do

2  business with Defendants as opposed to Plaintiffs.

3       138.    Plaintiffs are informed and believe, and on that basis allege, that as a result of Defendants'

4  actions and conduct, including but not limited to the use of Plaintiffs' property, which has had the effect, and

5  shall have the effect, of interfering with Plaintiffs' economic relationships with customers and supporters,

6  Plaintiff has been damaged in an amount to be established according to proof at trial.

7       139.    Plaintiffs are informed and believe, and on that basis allege, that Defendants' wrongful acts

8  will continue to cause injury to Plaintiffs and that such injury will continue unless enjoined and restrained by

9  this Court.

10       140.    Upon information and belief, Defendants have acted intentionally and despicably with

11  oppression, fraud and malice toward Plaintiffs.  Plaintiffs, therefore, are entitled to an award of punitive

12  damages for the sake of example and by way of punishing Defendants pursuant to California Civil Code §

13  3294.

## TENTH CLAIM FOR RELIEF
### Defamation (Libel Per Se)
### California Common Law
(Against All Defendants)

17       141.    Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 140 above as if fully

18  set forth herein.

19       142.    Plaintiffs are informed and believe that Defendants acting individually and through their

20  alter ego companies, published false and defamatory statements about Plaintiffs, which statements and

21  writing were defamatory on their face, imputing a lack of honesty associated with the Company's business

22  including disparaging Plaintiffs' character and integrity and imputing business misconduct which were

23  unprivileged and had a natural tendency to injure or cause special damages.

24       143.    Plaintiffs made such defamatory statements on Plaintiffs' MySpace and Facebook pages

25  over the Internet to the public at large.

26       144.    Plaintiffs are informed and believe that such defamatory statements are libel per se.

27

28

145.     As a direct and proximate result of the defamatory statements made by Defendants, Plaintiffs have suffered and will suffer loss of income, loss of profits, and damage to their character and reputation in an amount to be proven at trial.

146.     Plaintiffs are informed and believe, and on that basis allege, that Defendants' wrongful acts will continue to cause injury to Plaintiffs and that such injury will continue unless enjoined and restrained by this Court.

147.     Upon information and belief, Defendants have acted intentionally and despicably with oppression, fraud and malice toward Plaintiffs.  Plaintiffs, therefore, are entitled to an award of punitive damages for the sake of example and by way of punishing Defendants pursuant to California Civil Code § 3294.

## ELEVENTH CLAIM FOR RELIEF
### Breach of Oral/Implied Contract
### California Common Law
### (Against Mr. and Ms. Legge)

148.     Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 147 above as if fully set forth herein.

149.     The oral/implied employment agreement entered into in San Diego and Orange Counties, California in September 2008 through December 2008 by and between Plaintiffs, on one side, and Defendants Mr. and Ms. Legge, on the other side, was and is a binding and enforceable oral/implied contract.

150.     On or about September 13, 2008, Plaintiffs entered into an oral investment agreement with Defendants Mr. and Ms. Legge in which Mr. and Ms. Legge were to tender to Plaintiffs an up-front investment of $115,000.00 for 50% ownership of the "Knukle, Inc." enterprise.

151.     In or around late September 2008, Mr. and Ms. Legge informed Plaintiffs that they were unwilling to sign a formal written investment agreement that incorporated the terms of the oral agreement formed between the parties on September 13, 2008. Plaintiffs are informed and believe that Mr. and Ms. Legge were unwilling to invest all of the $115,000.00 up-front, and instead, requested to invest the $115,000.00 in installments as payments became due to determine if Plaintiffs' "Knukle, Inc." business

1    enterprise was successful. From September 2008 through December 2008, Mr. and Ms. Legge invested a

2    total of $42,000.00 into the "Knukle, Inc." business.

3         152.     On or about December 17, 2008, Defendants Mr. and Ms. Legge unilaterally terminated the

4    oral/implied contract with Plaintiffs and locked Plaintiff out of the www.knukleinc.com website and their

5    business enterprise. At all times from September through December 2008, Plaintiffs were in full compliance

6    with and had performed all obligations and conditions required of them under the terms of their oral/implied

7    contract.

8         153.     Defendants Mr. and Ms. Legge breached their oral/implied contract with Plaintiffs by

9    failing to pay the $115,000 as promised, locking Plaintiffs out of the business, and converting Plaintiffs'

10    property to their own use in or around December 17, 2008.

11        154.     Defendants Mr. and Ms. Legge's breach of the oral/implied contract with Plaintiffs, as

12    alleged herein, proximately caused legal harm and damages to Plaintiffs, including interests and costs, all of

13    which are recoverable by Plaintiffs in an amount to be proven at the time of trial.

**TWELFTH CLAIM FOR RELIEF**
**Civil Conspiracy**
**California Common Law**
**(Against All Defendants)**

17        155.     Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 154 above as if fully

18    set forth herein.

19        156.     Upon information and belief, it is alleged that Defendants entered into a conspiracy with

20    the intent to agree or conspire to commit violations of the federal and state unfair competition laws and

21    common law prohibitions against trademark infringement, conversion, and fraud as alleged herein to the

22    detriment of Plaintiffs.

23        157.     Upon information and belief, it is alleged that the conspiracy consisted of the process by

24    which Defendants agreed to participate in, and did participate in, to unlawfully convert Plaintiffs' property

25    and unfairly compete with Plaintiffs, which violated federal and state laws.

26        158.     Upon information and belief, it is alleged that the Defendants knowingly joined and

27    conspired with each other, and with others, to commit violations of the federal and state unfair competition

28

1    laws and common law prohibitions against trademark infringement, conversion, fraud, interference with

2    prospective advantage and economic relationships and defamation as alleged herein to the detriment of

3    Plaintiffs.

4         159.    Upon information and belief, it is alleged that each of the actions alleged herein on the part

5    of Defendants was an overt act undertaken in furtherance of the conspiracy.

6         160.    Upon information and belief, it is alleged that each Defendant was a direct, necessary, and

7    substantial participant in the conspiracy and common course of conduct complained of herein.

8         161.    As a direct, foreseeable and proximate result of Defendants' wrongful conduct, Plaintiffs

9    have suffered injuries are entitled to damages in an amount to be proven at trial.

10        162.    Plaintiffs are informed and believe, and on that basis allege, that Defendants' wrongful acts

11   will continue to cause injury to Plaintiffs and that such injury will continue unless enjoined and restrained by

12   this Court.

13        163.    Upon information and belief, Defendants have acted intentionally and despicably with

14   oppression, fraud and malice toward Plaintiffs.  Plaintiffs, therefore, are entitled to an award of punitive

15   damages for the sake of example and by way of punishing Defendants pursuant to California Civil Code §

16   3294.

### THIRTEENTH CLAIM FOR RELIEF
#### Declaratory Relief
#### United States Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202
#### (Against All Defendants)

20        164.    Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 163 above as if fully

21   set forth herein.

22        165.    Plaintiffs allege that an actual controversy now exists between Plaintiffs and Defendants

23   concerning:

24             a.    the terms and conditions of an oral/implied investment agreement;

25             b.    the parties' respective rights and obligations with respect to the "Knukle, Inc."

26                  enterprise and associated intellectual property rights;

27             c.    the parties' rights in the "Knukle, Inc.," "Knukle Inc" and "Knukle" trademarks;

28

d.  the parties' rights in the "Knukle, Inc.," "Knukle Inc" and "Knukle" tradenames;

e.  the parties' rights to the website and domain name, "www.knukleinc.com";

f.  the parties' rights to any photographs, graphics, and designs bearing the trademarks, "Knukle, Inc.," "Knukle Inc" and "Knukle" whether published or not published on the worldwide web, "www.knukleinc.com", "www.knukleincclothing.com", Facebook, MySpace or in any other type of marketing or advertising;

g.  the parties' rights to the monies, accounts receivable, and purchase orders related to the sale of "Knukle, Inc.," "Knukle Inc" or "Knukle" clothing merchandise from May 2008 through present;

h.  whether Defendants are liable for trademark infringement and unfair competition under the Lanham Act and/or common law;  and

i.  Defendants' right to form Knukle Two, to appropriate Plaintiffs' merchandise, trademarks, and other property, tangible and intangible, to compete with Plaintiffs' business activities related to the "Knukle, Inc." enterprise.

166.  Plaintiffs further allege that as a proximate result of the activities of the Defendants as set forth above, Plaintiffs are unable to effectively conduct business, use its trademarks effectively, and sell clothing merchandise bearing its trademarks without actual confusion in the marketplace until a judicial determination of the dispute over ownership of the trademarks is obtained.

167.  Accordingly, pursuant to 28 U.S.C. §§ 2201 and 2202, Plaintiffs seek a declaration that, because it was unlawful for Defendants to appropriate for themselves all of the assets and intellectual property rights related to the "Knukle, Inc." enterprise and to form Knukle Two to compete with Plaintiffs' business activities related to the "Knukle, Inc." enterprise, that:

a.  Plaintiffs retain a substantial ownership interest, if not an entire ownership interest in the "Knukle, Inc." enterprise and intellectual property rights associated therewith;

b.  Plaintiffs have established valid trademark rights in the "Knukle, Inc.," "Knukle Inc" and "Knukle" trademarks and tradenames;

c.  Plaintiffs are the rightful owners of all rights to the "Knukle, Inc.," "Knukle Inc" and "Knukle" trademarks and tradenames;

d.  Plaintiffs retain a substantial ownership interest, if not an entire ownership interest in the "www.knukleinc.com" and "www.knukleincclothing.com" websites and domain names;

e.  Plaintiffs are the rightful owners of any photographs, graphics, and designs bearing the trademarks, "Knukle, Inc.," "Knukle Inc" and "Knukle" whether published or not published on the worldwide web, "www.knukleinc.com", "www.knukleincclothing.com", Facebook, MySpace or in any other type of marketing or advertising;

f.  Plaintiffs are entitled to a substantial amount, if not the entirety of monies, accounts receivable, and purchase orders related to the sale of "Knukle, Inc.," "Knukle Inc" or "Knukle" clothing merchandise from May 2008 through present;

g.  Defendants are liable to Plaintiffs for trademark and trade name infringement, false advertising and unfair competition under the Lanham Act and/or common law; and

h.  Defendants unlawfully formed Knukle Two, to appropriate Plaintiffs' merchandise, trademarks, and other property, tangible and intangible, to compete with Plaintiffs' business activities related to the "Knukle, Inc." enterprise.

## FOURTEENTH CLAIM FOR RELIEF
### Accounting
### (Against All Defendants)

168.  Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 167 above as if fully set forth herein.

169.  In order to determine the full amount of monies Defendants owe to Plaintiffs, Plaintiffs seek a full and complete accounting from Defendants related to the following:

(1)     all monies received by Defendants related to the sale or distribution of "Knukle, Inc.," "Knukle Inc" or "Knukle" merchandise;

(2)     all monies actually expended by Defendants for costs directly related to the sale of "Knukle, Inc.," "Knukle Inc" or "Knukle" merchandise;

(3)     all current accounts receivable from the sale of "Knukle, Inc.," "Knukle Inc" or "Knukle" merchandise;

(4)     all current purchase orders for the sale of "Knukle, Inc.," "Knukle Inc" or "Knukle" merchandise;

(5)     the location of all "Knukle, Inc.," "Knukle Inc" or "Knukle" merchandise or promotional material being produced or having already been produced but not yet sold so as to be included in Points (1) and (2) above, whether in transit or stationary, whether in the United States or abroad; and

(6)     the location of all of the film, designs, and other content used to produce all "Knukle, Inc.," "Knukle Inc" or "Knukle" merchandise, promotional material, or the www.knukleinc.com website, and any other assets of Defendants acquired from May 2008 to present that are related to the "Knukle, Inc." enterprise, whether or not paid for by Defendants.

## FIFTEENTH CLAIM FOR RELIEF
### Constructive Trust/Equitable Lien
### (Against All Defendants)

170.     Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 169 above as if fully set forth herein.

171.     Plaintiffs are entitled to the profits that Defendants will or have derived from the intrusion of Plaintiffs' rights pursuant to the statutory and common laws of United States and California.

172.     Upon information and belief, Defendants own and possess tangible personal property, and other assets including, but not limited to, monies, accounts receivable, purchase orders, bank savings and other financial accounts, merchandise and other assets, consisting of profits and property from or which will be obtained by Defendants' illegal and tortious acts, as alleged herein.

173.     As Plaintiffs are informed and believe, and on that basis allege, that Defendants' wrongful acts will cause irreparable injury to Plaintiffs and that such injury will continue, Plaintiffs have no adequate remedy at law unless a constructive trust/equitable lien is imposed by this Court on Defendants to compel Defendants to hold the above-mentioned tangible personal property and other assets as constructive trustees or equitable lienholders for the benefit of Plaintiffs in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS, AND EACH OF THEM, PRAY FOR A JUDGMENT AGAINST DEFENDANTS, AND EACH OF THEM, AS FOLLOWS:

1.  That Defendants be held liable for unfair competition, false advertising, trade name infringement, false designation of origin, and cybersquatting in violation of the Lanham Act, 15 U.S.C. § 1125(a) and (d), as alleged herein.

2.  That Defendants be held liable for unfair competition, false advertising, and false designation of origin in violation of the California Business and Professions Code, as alleged herein.

3.  That Defendants be held liable for unfair competition, trademark infringement, trade name infringement, conversion, fraud, constructive fraud, intentional interference with prospective business advantage, intentional interference with existing economic relationships, defamation (libel per se), and civil conspiracy in violation of the California common law, as alleged herein.

4.  That Defendants Knukle Two and Mr. and Ms. Legge be held liable for breach of oral/implied contract in violation of California common law, as alleged herein.

5.  That Defendants, and their officers, employees, agents, servants, attorneys, and representatives, and all other persons, firms, or corporations in active concert or participation with them, be temporarily, preliminarily and permanently enjoined and restrained, pursuant to this Court's inherent equitable powers and pursuant to 15 U.S.C. § 1116, and California Business and Professions Code § 14402 **(except with respect to any and all prior or current purchase orders or contracts, as of the date of this Court's order, entered into by and between Defendants and any customer, retailer, distributor, manufacturer or other supplier or**

**purchaser of merchandise bearing the trademarks, "Knukle Inc," "Knukle, Inc." or "Knukle") from:**

    a.    holding themselves out as rightful owners of the "Knukle, Inc." enterprise;

    b.    asserting ownership rights and control over Plaintiffs' property and intellectual property rights, including, but not limited to, Plaintiffs' "Knukle Inc," "Knukle, Inc." and "Knukle" trademarks and tradenames, and the domain name and website, "www.knukleinc.com";

    c.    the unauthorized use of Plaintiffs' "Knukle Inc," "Knukle, Inc." and "Knukle" trademarks in commerce;

    d.    the unauthorized use of Plaintiffs' "Knukle Inc," "Knukle, Inc." and "Knukle" trade names in commerce;

    e.    the unauthorized use of the domain name and website, "www.knukleinc.com";

    f.    the unauthorized use of Plaintiffs' photographs, graphics, and designs bearing Plaintiffs' trademarks "Knukle Inc," "Knukle, Inc." and "Knukle" whether published or not published including, but not limited to, the worldwide web, "www.knukleinc.com", "www.knukleincclothing.com", Facebook, MySpace, traditional media channels, word of mouth, or in any other type of marketing or advertising until further determination of the rights and liabilities of the parties at a preliminary injunction hearing or at trial;

    g.    any and all future marketing, sale or distribution, or contracting for the marketing, sale or distribution of clothing, merchandise, and accessories bearing Plaintiffs' trademarks,  "Knukle Inc," "Knukle, Inc." or "Knukle," or until further determination of the rights and liabilities of the parties at a preliminary injunction hearing or at trial; and

    h.    operating Knukle Two to compete with Plaintiffs' business activities related to the "Knukle, Inc." enterprise.

6.  That Defendants, and their officers, employees, agents, servants, attorneys, and representatives, and all other persons, firms, or corporations in active concert or participation with them, be temporarily, preliminarily and permanently ordered, pursuant to this Court's inherent equitable powers and pursuant to 15 U.S.C. § 1116, and California Business and Professions Code § 14402 (**with respect to any and all prior or current purchase orders or contracts, as of the date of this Court's order, entered into by and between Defendants and any customer, retailer, distributor, manufacturer or other supplier or purchaser of merchandise bearing the trademarks, "Knukle Inc," "Knukle, Inc." or "Knukle"**) to:

    a.    place all funds and accounts receivable from the sale of clothing, merchandise, and accessories bearing Plaintiffs' trademarks, "Knukle Inc," "Knukle, Inc." or "Knukle", into a Court blocked account or under the control of a trustee or receiver until further determination of the rights and liabilities of the parties at a preliminary injunction hearing or at trial; and

    b.    transfer of ownership and control of the domain name and website at "www.knukleinc.com" to Plaintiffs.

7.  That Defendants, pursuant to 15 U.S.C. § 1116(a), be required to file with the Court and to serve on Plaintiffs within thirty (30) days after service of an injunction order as requested herein, a report in writing under oath setting forth in detail the manner and form in which they have complied with the Court's order.

8.  That this Court declare: (a) Plaintiffs retain a substantial ownership interest, if not an entire ownership interest in the "Knukle, Inc." enterprise and intellectual property rights associated therewith; (b) Plaintiffs have established valid trademark rights in the "Knukle, Inc.," "Knukle Inc" and "Knukle" trademarks and tradenames; (c) Plaintiffs are the rightful owners of all rights to the "Knukle, Inc.," "Knukle Inc" and "Knukle" trademarks and tradenames; (d) Plaintiffs retain a substantial ownership interest, if not an entire ownership interest in the "www.knukleinc.com" and "www.knukleincclothing.com" websites and domain names; (e)

Plaintiffs are the rightful owners of any photographs, graphics, and designs bearing the trademarks, "Knukle, Inc.," "Knukle Inc" and "Knukle" whether published or not published on the worldwide web, "www.knukleinc.com", "www.knukleincclothing.com", Facebook, MySpace or in any other type of marketing or advertising; (f) Plaintiffs are entitled to a substantial amount, if not the entirety of monies, accounts receivable, and purchase orders related to the sale of "Knukle, Inc.," "Knukle Inc" or "Knukle" clothing merchandise from May 2008 through present; (g) Defendants are liable to Plaintiffs for trademark and trade name infringement, false advertising and unfair competition under the Lanham Act and/or common law; and (h) Defendants unlawfully formed Knukle Two, to appropriate Plaintiffs' merchandise, trademarks, and other property, tangible and intangible, to compete with Plaintiffs' business activities related to the "Knukle, Inc." enterprise.

9. That an accounting be ordered of all the profits realized by Defendants, or others acting in concert or participation with them, from Defendants' unauthorized use or infringement of the "Knukle, Inc.," "Knukle Inc" or "Knukle" trade names or marks, and acts of unfair competition, false designation of origin, false advertising, conversion, fraud, conspiracy, and interference with Plaintiffs' economic relationships, as alleged herein.

10. That an accounting be ordered of the amount of current accounts receivable and purchase orders, and the location of merchandise, promotional materials, film, designs, and other assets related to the Knukle One, Knukle Two, "Knukle, Inc.," "Knukle Inc" or "Knukle" enterprises in the possession of Defendants, or others acting in concert or participation with them, resulting from their acts of infringement and other unlawful conduct, as alleged herein.

11. That Defendants be required to account for and pay to Plaintiffs all gains, profits, and advantages derived from their acts of infringement and other unlawful conduct, as alleged herein.

12. That all gains, profits, advantages, and assets of the Knukle One, Knukle Two, "Knukle, Inc.," "Knukle Inc" or "Knukle" enterprises in the possession of Defendants, or others acting in concert or participation with them, derived by Defendants from their acts of infringement and

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF        38

1   other unlawful conduct alleged herein be deemed to be in constructive trust for the benefit of

2   Plaintiffs.

3   13. That judgment be entered against Defendants for Plaintiffs' actual and consequential damages

4   as a result of Defendants' acts of infringement and other unlawful conduct alleged herein, and

5   for any additional profits attributable to Defendants' wrongful conduct, according to proof.

6   14. That Defendants' unlawful conduct as alleged herein be deemed a willful violation of

7   Plaintiffs' intellectual property rights.

8   15. That the Court declare this an exceptional case.

9   16. That Plaintiffs' actual damages be trebled pursuant to 15 U.S.C. § 1117(a).

10   17. That Plaintiffs' recover maximum statutory damages, pursuant to 15 U.S.C. § 1117(d), in the

11   amount of $100,000, for each act of Defendants' cybersquatting.

12   18. That Plaintiffs recover their reasonable attorneys' fees.

13   19. That Plaintiffs be awarded punitive and exemplary damages pursuant to California Civil Code

14   § 3294.

15   20. That Plaintiffs recover the costs of this suit.

16   21. That Plaintiffs be granted pre-judgment and post-judgment interest on damages caused by

17   Defendants.

18   22. That Plaintiffs be granted such other and further relief as the Court deems just and proper.

19

20   Respectfully Submitted,

21

22   DATED: March 10, 2009        CATALYST LAW GROUP, APC

23

24   _____

25   Christopher Villasenor
    Attorney for Plaintiffs
    JAMES GROOMS, BRYCEMARIE PHELAN AND
26   KNUKLE, INC., A COLORADO CORPORATION

27

28

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| James Grooms, Brycemarie Phelan, and Knukle, Inc., a Colorado Corporation | John Legge, Gwen Legge, Knukle, Inc., Cali Corp, Artillery Distribution, Sean Myers, and Devin Mercado |

**(b)** County of Residence of First Listed Plaintiff   El Paso, Colorado
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Orange County
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Christopher A. Villasenor, Catalyst Law Group, 9710 Scranton Rd,
#170 San Diego, CA  92121 (858) 450-0099

Attorneys (If Known)

**'09 CV 0489 IEG POR**

2009 MAR 11 PM 2:20

FILED
CIVIL
DEPUTY

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1   U.S. Government Plaintiff
- ☒ 3   Federal Question (U.S. Government Not a Party)
- ☐ 2   U.S. Government Defendant
- ☐ 4   Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** |
| | | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 861 HIA (1395ff) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 862 Black Lung (923) |
| ☐ 195 Contract Product Liability | | | | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | ☐ 510 Selective Service |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | ☐ 850 Securities/Commodities/ Exchange |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | ☐ 875 Customer Challenge 12 USC 3410 |
| | | | | ☐ 890 Other Statutory Actions |
| | | | | ☐ 891 Agricultural Acts |
| | | | | ☐ 892 Economic Stabilization Act |
| | | | | ☐ 893 Environmental Matters |
| | | | | ☐ 894 Energy Allocation Act |
| | | | | ☐ 895 Freedom of Information Act |
| | | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| | | | | ☐ 950 Constitutionality of State Statutes |

| ☐ 610 Agriculture |
|---|
| ☐ 620 Other Food & Drug |
| ☐ 625 Drug Related Seizure of Property 21 USC 881 |
| ☐ 630 Liquor Laws |
| ☐ 640 R.R. & Truck |
| ☐ 650 Airline Regs. |
| ☐ 660 Occupational Safety/Health |
| ☐ 690 Other |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1   Original Proceeding
- ☐ 2   Removed from State Court
- ☐ 3   Remanded from Appellate Court
- ☐ 4   Reinstated or Reopened
- ☐ 5   Transferred from another district (specify)
- ☐ 6   Multidistrict Litigation
- ☐ 7   Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 USC Section 1125(a) and (d), 28 USC Sections 2201 & 2202

Brief description of cause:
Unfair Competition and Federal Trade Mark Infringement; Injunctive and Declatory Relief

## VII. REQUESTED IN COMPLAINT:

- ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions)   JUDGE _____   DOCKET NUMBER _____

DATE   03/10/2009

SIGNATURE OF ATTORNEY OF RECORD
Christopher A. Villasenor X   *(signature)*

---

FOR OFFICE USE ONLY

RECEIPT #  160910   AMOUNT  $350   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

RB 03/11/09



UNITED STATES
DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# 160910    — MB

March 11. 2009
15:19:51

Civ Fil Non-Pris
USAO #.: 09CV0489 CIVIL FILING
Judge..: IRMA E GONZALEZ
Amount.:                      $350.00 CK
Check#.: 23067

Total–>  $350.00

FROM: JAMES BROOMS VS
JOHN LEGGE