Christopher A. Villasenor, Esq. (SBN 147118)
**CATALYST LAW GROUP**
**A PROFESSIONAL CORPORATION**
9710 Scranton Road, Suite 170
San Diego, CA 92121
Telephone: (858) 450-0099
Facsimile: (858) 450-9834

Attorney for Plaintiffs
JAMES GROOMS AND BRYCEMARIE PHELAN AND KNUKLE, INC., A COLORADO CORPORATION

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES GROOMS, an individual; BRYCEMARIE PHELAN, an individual; KNUKLE, INC., a Colorado corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>JOHN LEGGE, an individual; GWEN LEGGE, an individual; KNUKLE, INC., a California corporation; ARTILLERY DISTRIBUTION, an unknown entity; SEAN MYERS, an individual; DEVIN MERCADO, an individual;; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 09CV0489 IEG POR<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

**TABLE OF CONTENTS**

I. PROCEDURAL BACKGROUND .................................................................................. 1

II. POINTS AND AUTHORITIES ................................................................................... 2

    A.  This Court Should Grant Plaintiffs' Application for Preliminary Injunction for the Same Reasons This Court Granted Plaintiffs' Application for Temporary Restraining Order ................................................................................... 2

    B.  Answering Defendants Offer Weak and Unsubstantiated Facts in Response to Plaintiffs' Factual Showing................................................................. 3

        1.  Plaintiffs' Claims For Federal and State Unfair Competition Will Succeed ................................................................................................. 5

        2.  Plaintiffs' Claim For Tortious Interference with Prospective Advantage Will Succeed ............................................................................. 9

        3.  Plaintiffs' Claim for Conversion Will Succeed ........................................ 10

        4.  Plaintiffs' Claim For Cybersquatting Will Succeed ................................. 11

    C.  Answering Defendants' Controverted Facts Should Not Impact This Court's Irreparable Harm Or Balancing of the Hardships Analyses ................ 11

    D.  The Bond Already Posted By Plaintiffs As Ordered by This Court Should Stand..... 13

    E.  Plaintiffs Request Further Injunctive Relief to Avoid Further Irreparable Harm Based Upon New Information................................................................ 14

III. CONCLUSION ........................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Applied Info. Sciences Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007).......................... 5

*Cadence Design Systems, Inc. v. Avant! Corp.*, 125 F.3d 824 (9th Cir. 1997) ......................4, 12

*E.F. Prichard Co. v. Consumers Brewing Co.*, 136 F.2d 512, 521 (6th Cir. 1943).....................8

*Emergency One, Inc., v. Am. Fire Eagle Engine Co., Inc.*, 332 F.3d 264, 267 (4th Cir. 2003) ........6

*Greacen v. Bell*, 115 F. 553, 554 (D. N.J. 1902)..............................................................................8

*Hotmail Corp. v. Van$ Money Pie Inc.*, 1998 WL 388389 at *8 (N.D. Cal. April 16, 1998) ........12

*Int'l Order of Job's Daughters v. Lindenburg and Co., Inc.*, 332 F. 3d 264, 267
(4th Cir. 2003) ................................................................................................................... 5

*Kendall-Jackson Winery, Ltd. V. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 n. 7
(9th Cir. 1998) ................................................................................................................... 6

*Kidd v. Johnson*, 100 U.S. 617 (1879)........................................................................................... 8

*Vision Sports, Inc. v. Melville Corp.*, 888 F.3d 609, 612 n.3 (9th Cir. 1989) .............................11

**Statutes**

Cal. Business & Professions Code § 17200 ....................................................................................5

Lanham Act, 15 U.S.C. §1125 .............................................................................................3, 4, 5, 6

ii

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

CASE NO. 09CV0489 IEG POR

## I. PROCEDURAL BACKGROUND

Plaintiffs James Grooms and Brycemarie Phelan (collectively, "Plaintiffs") filed an Ex Parte Application for Temporary Restraining Order and Order to Show Cause RE: Preliminary Injunction ("Plaintiffs' Application") seeking various prohibitory and mandatory injunctions alleging claims against Defendants John Legge, Gwen Legge, Knukle, Inc., a California corporation (collectively, "Answering Defendants"), Artillery Distribution, an unknown entity, Sean Myers, and Devin Mercado for federal and state unfair competition, cyberpiracy, tortious interference with prospective economic advantage, and conversion (the "Injunction Claims").

The Court heard oral argument on March 16, 2009 at 10:30 a.m., but Answering Defendants failed to appear.[1] On March 17, 2009, this Court granted Plaintiffs' Application and issued a Temporary Restraining Order (hereinafter, "TRO"). After more than a week of attempts by Plaintiffs' counsel to secure compliance by Answering Defendants with the TRO, Plaintiffs filed with this Court an Ex Parte Application for Order to Show Cause RE: Contempt, Sanctions, Attorneys' Fees for Violation of the Court's TRO on Wednesday, March 25, 2009.

On March 16, 2009, following oral argument before this Court, Answering Defendants filed an untimely Opposition to Plaintiffs' Ex Parte Application for Temporary Restraining Order (hereinafter, "Answering Defendants' First Opposition").[2] On March 27, 2009, the Answering

---

[1] To date, although other Defendants have been named in this matter (specifically, Artillery Distribution, Sean Myers, and Devin Mercado), Plaintiffs have been unable to serve them despite expending diligent efforts to do so. These Defendants, too, failed to appear at the OSC hearing on March 16, 2009 at 10:30 a.m. While these Defendants have notice of this matter as evidenced by the fact that they provided sworn declarations in support of Answering Defendants' untimely Opposition to Plaintiffs' Ex Parte Application for Temporary Restraining Order filed with this Court after the OSC hearing, they have refused to provide Plaintiffs with an adequate address at which they can be served despite Judge Battaglia's Order to do so.

[2] Answering Defendants' Second Opposition claims in a footnote on Page 2 that "Plaintiffs were able to avoid an opposition to the TRO by providing counsel for Legge, Mr. Jain, the **wrong date for the ex parte application**. Declaration of Rajiv Jain ("Jain Decl."), at ¶ 5." Mr. Jain's declaration includes Exhibit "C", which purports to be a copy of Plaintiffs' Ex Parte Application for Temporary Restraining Order with a redacted date of "March 17, 2009." This is completely false, misleading to the Court and a further example of Defendants' bad faith tactics. Plaintiffs' original Ex Parte Application for Temporary Restraining Order included a handwritten date of "March 16, 2009" inserted by Plaintiffs' counsel's paralegal, Ms. Vickie Johnson. (Declaration of Vickie Johnson ("Johnson Decl."), at ¶ 4, and a true and correct copy of the file stamped version of the original document is attached thereto as Exhibit "2"). Attached to Ms. Johnson's declaration as Exhibit "3" include Advanced Attorney Service Process Service Instruction Invoices, which are examples of her handwriting showing the way she writes "7s" at least 16 times; each with a slash through the middle of the "7". (Johnson Decl., Exhibit "3"). The "7" in Exhibit "C" to Mr. Jain's declaration has no slash. Ms. Johnson prepared the Ex Parte Application for Temporary Restraining Order and Court's Order to Show Cause RE: Plaintiffs' Ex Parte Application for Temporary Restraining Order dated March 11, 2009 to Advanced

Defendants filed Defendants Legge and Knukle, Inc.'s Response and Opposition to OSC RE: Plaintiffs' Ex Parte Application for Temporary Restraining Order (hereinafter, "Answering Defendants' Second Opposition"). Pursuant to the terms of the TRO, Plaintiffs' Reply to Answering Defendants' First and Second Oppositions had to be filed with this Court by Tuesday, March 31, 2009 at 12:00 p.m. Accordingly, Plaintiffs hereby respectfully submit this Reply in Support of Plaintiffs' Application (hereinafter, this "Reply") in compliance with the TRO.

## II. POINTS AND AUTHORITIES

### A. This Court Should Grant Plaintiffs' Application for Preliminary Injunction for the Same Reasons This Court Granted Plaintiffs' Application for Temporary Restraining Order.

This Court's Order affirmatively states that the Ninth Circuit uses the *same two alternative tests* to evaluate the propriety of issuing a temporary restraining order or a preliminary injunction. (Order on Plaintiffs' Motion for a Temporary Restraining Order dated March 17, 2009, page 6, lines 17-24). As noted above, *this Court granted Plaintiffs' Application on March 17, 2009* finding that, among other things: 1) Plaintiffs were likely to succeed on the merits of their Injunction Claims; 2) Answering Defendants appeared to have acted in bad faith; 3) Plaintiffs would suffer irreparable harm in the absence of relief; and 4) the balance of hardships weighed in favor of granting Plaintiffs' application for temporary restraining order. As a result of the foregoing, Plaintiffs were granted certain prohibitory and mandatory injunctions by this Court.

Nothing in Answering Defendants' First and Second Oppositions (collectively, their "Oppositions") changes the fundamental facts justifying an injunction in this case. In their

---

Attorney Service which was served on the Answering Defendants, and both documents included the March 16, 2009 date. (See Johnson Decl. at ¶¶ 4-6 and 8-9; Declaration of P.A. Rodriguez, at ¶ 3-6). Ms. Johnson and the process server who took possession of the documents and served the Answering Defendants, both declared that no one made a revision to the original document and that the documents with the March 16, 2009 date were served on Answering Defendants. (See Johnson Decl. at ¶¶ 8 and 9; Declaration of P.A. Rodriguez, at ¶ 5). Furthermore, neither Answering Defendants nor their counsel dispute that they received the Court's Order to Show Cause RE: Plaintiffs' Ex Parte Application for Temporary Restraining Order dated March 11, 2009, which also included the March 16, 2009 date. Moreover, Answering Defendants and/or their counsel could have consulted PACER, or contacted this Court's clerk, or Plaintiffs' counsel at anytime from March 11 through March 16, 2009 to ensure that they had the correct date for the hearing if they received notice of two different dates. They failed to do so. Accordingly, Answering Defendants' argument that Plaintiffs' counsel and/or agents attempted to avoid the Answering Defendants' participation at the OSC hearing scheduled on March 16, 2009 is pure chicanery and preposterous.

Oppositions, Answering Defendants offer this Court *the same facts* as those set forth in Plaintiffs' moving papers *with only a handful of material differences*. Answering Defendants offer no credible evidence to dispute Plaintiffs' likelihood of success on the merits of their Injunction Claims, but instead evince the attitude that because they have purportedly invested into expanding the personal and intellectual property that they misappropriated from Plaintiffs, it would be unjust to stop them now – irrespective of Plaintiffs' property rights. The Lanham Act, however, does not view intensive unfair competition as a defense to liability.

Thus, if the materially different facts that Answering Defendants provided in their Oppositions are either suspect, or legally insignificant to: 1) Plaintiffs' likelihood of success on the merits of their Injunction Claims; 2) the possibility of irreparable injury to Plaintiffs if a preliminary injunction is not granted by this Court; and 3) this Court's balance of hardships analysis, this Court should grant Plaintiffs' a preliminary injunction for the same reasons this Court granted Plaintiffs' Ex Parte Application for Temporary Restraining Order. Accordingly, the balance of this Reply will, first, set forth those disputed facts, and second, explain why each disputed fact is suspect or legally insignificant to this Court's analysis whether to grant Plaintiffs continued injunctive relief.

### B. Answering Defendants Offer Weak and Unsubstantiated Facts in Response to Plaintiffs' Factual Showing.

Plaintiffs have submitted substantial evidence in support of their Application. *Answering Defendants, on the other hand, have submitted weak and unsubstantiated evidence in their Oppositions that was not already before this Court when it granted Plaintiffs' Application.* Answering Defendants concede almost every material fact relevant to Plaintiffs' Injunction Claims. The only material facts that Plaintiffs offered in their moving papers that are disputed by Answering Defendants' declarations are the following:

1) Plaintiffs declared that Answering Defendants John and Gwen Legge formed Answering Defendant Knukle, Inc., a California corporation (hereinafter, "Knukle Two") *without their knowledge, consent, or participation* (Declaration of James Grooms ("Grooms Decl."), at ¶ 27; Declaration of Brycemarie Phelan ("Phelan Decl."), at ¶ 21), **WHEREAS** Answering Defendants John and Gwen Legge declared that they formed Knukle Two *with Plaintiffs' knowledge, consent, and participation*. Declaration of John Legge ("J. Legge Decl."), at ¶

10; Declaration of Gwen Legge ("G. Legge Decl."), at ¶ 10; Deposition of John Legge ("J. Legge Depo."), at page 38, lines 22-25, pages 39-47).[3]

2) Plaintiffs declared that they ***did not agree to transfer*** their rights in the Marks and Names (defined below) to Knukle Two, a company of which they had no prior knowledge of or ownership in (Grooms Decl., at ¶¶ 3, 45, and Exhibit "1" attached thereto; Phelan Decl., at ¶¶ 3, 37), **WHEREAS** Answering Defendants John and Gwen Legge declared that ***Plaintiffs orally agreed to do so***. (J. Legge Decl., at ¶ 7; G. Legge Decl., at ¶ 7).

3) Plaintiffs declared that they ***invested approximately $20,000*** into building the "Knukle Inc", "Knukle, Inc." and "Knukle" trademarks and trade names (Supplemental Declaration of Brycemarie Phelan ("Phelan Supp. Decl."), at ¶ 2), **WHEREAS** Answering Defendants ***calculated Plaintiffs' investment at approximately $1,486.95.*** (Answering Defendants' Second Opposition, page 4, lines 22-25).[4]

4) Plaintiffs declared that, to their knowledge, Answering Defendants ***paid approximately $42,000*** towards expanding the "Knukle Inc", "Knukle, Inc." and "Knukle" trademarks and trade names before Answering Defendants converted Plaintiffs' personal and intellectual property (Grooms Decl., at ¶ 28; Phelan Decl., at ¶ 22), **WHEREAS** Answering Defendants ***declared they have paid approximately $77,557*** before their falling out with Plaintiffs in December 2008. (J. Legge Decl., at ¶ 25; G. Legge Decl., at ¶ 22).[5]

---

[3] Answering Defendants make this claim but then Defendant Legge testified that Plaintiffs were never issued any shares by Knukle Two, never elected as directors of Knukle Two, never appointed as officers of Knukle Two, never offered a shareholder agreement from Knukle Two, never made employees of Knukle Two, never offered a dollar from sales conducted by Knukle Two, never invited to a single meeting of Knukle Two, special or annual, and never included as a signatory to Knukle Two's bank account. (J. Legge Depo., at pages 39-47). Untenably, Answering Defendants argue that there is a 50/50 ownership of the Marks and Names (defined below) between themselves and the Plaintiffs in support of their opposition to Plaintiffs' Injunction while, in the same breath, argue that Plaintiffs have no ownership interest in Knukle Two, the company that Answering Defendants believe owns those Marks and Names. (J. Legge Decl., at ¶ 12; J. Legge Depo., at page 108, line 25, and page 109, lines 1-6). There was no consideration given to Plaintiffs in exchange for Answering Defendants' purported agreement to transfer the Marks and Names. Therefore, Answering Defendants' argument is not credible and should be disregarded.

[4] Answering Defendants' calculation is based on Plaintiffs' hurried ex parte submission. Plaintiffs declared under oath that they have spent approximately $20,000 on the "Knukle, Inc." enterprise, to date. (Phelan Supp. Decl. at ¶ 2). Plaintiffs are currently in the process of gathering documentary proof of the same. (Phelan Supp. Decl. at ¶ 2). However, just because documentary proof to that effect has not yet fully been provided, that does not mean Plaintiffs have only spent that amount that they have proven. Accordingly, the fact that Plaintiffs have expended significant funds and efforts on the "Knukle, Inc." enterprise (which is uncontroverted, only purportedly varied) is as strong as it was when this Court found in favor of Plaintiffs on the irreparable injury and balance of harms prongs of its injunction inquiry.

[5] Although Answering Defendants' imply that it is important that they spent more money than declared by Plaintiffs on the property they converted from Plaintiffs, that fact is neither material to the issues before the Court, nor a legally recognizable harm. *See Cadence Design Systems, Inc. v. Avant! Corp.*, 125 F.3d 824 (9th Cir. 1997) (in a Copyright case, "'[w]here the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration.'" (citations omitted and emphasis added]). As noted above, the Lanham Act, does not view intensive unfair competition as a defense to liability.

5) Plaintiffs declared that in the early evening on December 16, 2008, *they received a phone call from Defendants Sean Myers and Devin Mercado* explaining the contents of a conversation they had just had with Answering Defendant John Legge where he told them that he and Gwen Legge were going to "go behind Plaintiffs' backs" and start a new brand, "Knukle Inc" with the second "k" turned forwards to compete with Plaintiffs' Marks and Names (defined below) *before Plaintiffs called Defendant John Legge* and told him they would not transfer the mark to him or his wife, and that they no longer wanted to allow Answering Defendants to become 50/50 owners of the "Knukle, Inc." enterprise (Grooms Decl., at ¶ 44; Phelan Decl., at ¶ 36), **WHEREAS** Answering Defendant John Legge testified that he *never made that statement to Sean and Devin Mercado*. (J. Legge Depo., at page 107, lines 8-21).

Answering Defendants' entire defense rests on these factual differences and the implications they ask this Court to draw from them. However, as explained below, each of Answering Defendants' different accounts lack credibility and/or relevance to this Court's instant inquiry.

### 1. Plaintiffs' Claims For Federal and State Unfair Competition Will Succeed.

Contrary to Answering Defendants' assertion, this is not simply a business dispute over who has the right to use the "Knukle" brand; Plaintiffs or Answering Defendants. It is a federal lawsuit brought by the rightful owners of the trademarks and trade names "Knukle Inc", "Knukle, Inc." and "Knukle" (the "Marks and Names") with the second "k" turned backwards against a corporation and its principals who were selling, before this Court granted Plaintiffs' Application, infringing merchandise that they misappropriated from Plaintiffs brandishing the Marks and Names at Issue with the second "k" in "Knukle" turned forwards.

A plaintiff may show that it is likely to succeed on the merits of its trademark infringement claim under the Lanham Act by establishing that (1) it has a valid, protectable trademark," and (2) defendant's "use of the mark is likely to cause confusion." See *Applied Info. Sciences Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007). An action for competition under Cal. Bus. & Prof. Code section 17200 is "substantially congruent" to a trademark infringement claim under the Lanham Act. *Int'l Order of Job's Daughters v. Lindenburg and Co.*, 633 F.2d 912, 916 (9th Cir. 1980). As noted by this Court, "Plaintiffs must consequently prove priority of use in order to establish their ownership of the Knukle mark." (Order on Plaintiffs' Motion for a Temporary Restraining Order dated March 17, 2009, page 6, lines 17-24).

1   Answering Defendants concede that Plaintiffs first created the Marks and Names. (J. Legge Decl., at ¶ 2; G. Legge Decl., at ¶ 2; J. Legge Depo., at page 16, lines 16-25, and pages 17-18). Answering Defendants do not even dispute in either of their Oppositions that their marks and names are confusingly similar to Plaintiffs' Marks and Names. To avoid liability for unfair competition, Answering Defendants rely on one argument; *namely*, that they have an ownership interest in the Marks and Names. Answering Defendants rest their entire defense on this one point that is controverted by Plaintiffs' evidence, and consequently, legally insignificant.

Answering Defendants argue that Plaintiffs have no standing to bring a claim under the Lanham Act because Plaintiffs have no registered mark. (First Opposition, page 6, lines 6-11). This Court and the Ninth Circuit disagree and have held that unregistered marks deserve protection under the Lanham Act. (See *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 n.7 (9th Cir. 1998), and this Court's Order on Plaintiffs' Motion for a Temporary Restraining Order dated March 17, 2009, pages 7 and 8).

Answering Defendants claim that because Plaintiffs' application remains an Intent to Use application, Plaintiffs cannot prevail on their claims under federal or state laws to the extent Plaintiffs rely on that application. (Second Opposition, page 7, lines 15-17). Answering Defendants fail to consider all of the facts in this case and common law trademark theory. As noted by this Court, "When more than one user claims the exclusive right to use an unregistered trademark, priority is determined by the first actual use of the mark in a genuine commercial transaction." *Emergency One, Inc., v. Am. Fire Eagle Engine Co., Inc.* 332 F.3d 264, 267 (4th Cir. 2003). Plaintiffs submitted evidence that they first used the Marks and Names in commerce or our about July 30, 2008 and made their first internet sale on August 7, 2008 – more than a month before they met Answering Defendants. Answering Defendants offer no evidence and allege no facts to contradict Plaintiffs' evidence. Accordingly, **Plaintiffs own the Marks and Names.**

The only remaining question is whether Plaintiffs agreed to assign and did so assign their ownership interest in the Marks and Names to Knukle Two. Answering Plaintiffs' federal Intent to Use application for the mark, "Knukle" with the second "k" backwards, remains in Plaintiffs'

names; not Knukle Two. (Grooms Decl., at ¶ 5, and attached thereto is a true and correct copy of the same as <u>Exhibit "1"</u>; Phelan Decl., at ¶ 3). Plaintiffs have declared under oath that they did not agree to transfer their ownership interests in the Marks and Names to Knukle Two. (Phelan Supp. Decl., at ¶ 3). In fact, Plaintiffs have declared under oath that they did not even know Knukle Two was formed until February 2009 after they retained their current counsel who showed them the print out from the California Secretary of State's website confirming as much. (Phelan Supp. Decl., at ¶ 3).

Despite Plaintiffs' declarations, Answering Defendant Gwen Legge declares that she never demanded that the Marks and Names be assigned her individually. (G. Legge Decl., at ¶ 31). In addition, Answering Defendants John and Gwen Legge and Defendants Sean Myers and Devin Mercado have declared under oath that Plaintiffs did, in fact, agree verbally to transfer their common law rights to the Marks and Names to Knukle Two. (J. Legge Decl., at ¶ 7; G. Legge Decl., at ¶ 7; Declaration of Devin Mercado, at ¶ 13; Declaration of Sean Myers, at ¶ 13).

While there can be no argument that the introduction of documentary material such as assignments, bills of sale, etc. properly identified and made of record is the generally acceptable method of establishing ownership of and/or succession of trademarks, Answering Defendants have produced no such documentary material and have conceded that the same does not exist. (J. Legge Decl., at ¶ 7, 8; G. Legge Decl., at ¶ 7, 8; J. Legge Depo., at page 42, lines 17-25, page 43, lines 1-3). Accordingly, Answering Defendants' sole argument is whittled down to the following:

a. If Plaintiffs *agreed verbally* to assign the Marks and Names to Knukle Two (which is disputed); <u>AND</u>

b. If Answering Defendants invested money into designs comprising the Marks and Names thereafter based on an *oral agreement* (the contents of which are disputed); <u>THEN</u>

c. Answering Defendants did not unfairly compete with Plaintiffs.

Answering Defendants' First and Second Oppositions are chalked full of conclusory diatribe and smearing unprofessional allegations directed toward Plaintiffs and their counsel. ***Moreover, Answering Defendants' opposition lacks even the slightest authority, primary or secondary, to support their limited arguments***. Answering Defendants' First and Second Oppositions only serve

Page 7

1  to show this Court that they invested money into designs and clothing containing the "Knukle Inc",
2  "Knukle, Inc." and "Knukle" marks based on a nebulous oral agreement for 50/50 ownership of the
3  "Knukle, Inc." enterprise. What they ignore is that Plaintiffs submitted declarations and vast
4  amounts of other documentary evidence to that effect in their Application. Furthermore, Answering
5  Defendants used this investment to manufacture and distribute infringing goods. ***This was not a***
6  ***novel concept to this Court when it granted Plaintiffs' Application***.

7  In addition, long-standing primary and secondary authority in this area undercuts the
8  validity of the first and second premises of Answering Defendants' sole argument. Under similar
9  facts, circuit courts have held that "One who is the owner of a trade-mark does not, by entering into
10 a partnership and permitting the use of the trade-mark by the partnership, transfer his interest in the
11 trade-mark to the firm." *E.F. Prichard Co. v. Consumers Brewing Co.*, 136 F.2d 512, 521 (6th Cir.
12 1943); *Kidd v. Johnson*, 100 U.S. 617 (1879). It has been similarly held that "[w]hen a trade-mark
13 or trade-name is owned by one who enters into a partnership with another for the manufacture of
14 the article designated, the title of the trade-mark does not pass to the partnership except by express
15 agreement." *Greacen v. Bell*, 115 F. 553, 554 (D. N.J. 1902). Citing aged secondary authority, the
16 *Greacen* Court remarked:

> Where one allows the use of his trade-mark on goods manufactured by the firm, that fact alone does not prevent the use of it, and it may remain the sole property of the individual owner, and the fact that the property was used by the partnership for the partnership's profits does not, of itself, make it the partnership's property. What the partnership takes over as its own depends on the terms of the partnership agreement.

*Id.* at 554 (citations omitted).

22  Even if the Court ignored this authority and Plaintiffs' declarations and found that
23 Answering Defendants were co-owners of the Marks and Names, even a co-owner of a trademark
24 cannot convert co-owned assets to conduct a business that sells merchandise confusingly similar to
25 the merchandise comprising the co-owned mark for the sole benefit of the appropriating co-owner.
26 See *Id.* at 555. Answering Defendants' "ownership" argument does not change the fact that, after
27 their falling out with Plaintiffs, they flipped the second "k" in "Knukle" forwards to market and sell

merchandise that was *confusingly similar* to Plaintiffs' Marks and Names for the benefit of Knukle Two (*a corporation, in which, Answering Defendants admit Plaintiffs have no ownership interest*) using the "www.knukleinc.com" domain name and website which Answering Defendants admit was originally owned by Plaintiffs but has since been improved, *appropriated and digitally modified* by Answering Defendants to erase proof of Plaintiffs' involvement. (J. Legge Depo., at page 58, lines 16-25, page 59, lines 1-17).

Accordingly, Plaintiffs will likely succeed on their federal and state unfair competition claims. Thus, this Court should grant Plaintiffs continued injunctive relief.

### 2. Plaintiffs' Claim For Tortious Interference with Prospective Advantage Will Succeed.

Answering Defendants defend against this claim of Plaintiffs by arguing they did not specify any economic relationship that they had with any third parties, of which, Answering Defendants were aware such that they could be held liable to Plaintiffs for tortious interference. Apparently, Answering Defendants overlooked the months of work Plaintiffs put into the Mark and Names with their own Co-Defendants Artillery Distribution before they first met Plaintiffs. (Grooms Decl., at ¶ 1-19; Phelan Decl., at ¶ 1-14). They must also not consider the retailers and other customers who Plaintiffs contacted directly prior to the ASR trade show "potential customers." And what about Plaintiffs' right to attend the ASR trade show, the self touted "largest buying event in the action sports industry"; was that not an economic relationship? And clearly the consumers who visited the www.knukleinc.com website owned by Plaintiffs before Answering Defendants coopted it, some of whom who have now ordered merchandise bearing infringing marks to Plaintiffs' Marks and Names from Answering Defendants, they too must have been ignored.

Answering Defendants need look no further than this Court's Order on Plaintiffs' Motion for Temporary Restraining Order dated March 17, 2009, page 13, to find the "economic relationships" of which Answering Defendants were aware that supported this Court's finding that

Plaintiffs were likely to succeed on the merits of their tortious interference claim. Accordingly, this Court should grant Plaintiffs' request for continued injunctive relief.

### 3. Plaintiffs' Claim For Conversion Will Succeed.

In their Second Opposition, Answering Defendants provide only three (3) sentences in their brief devoted to responding to Plaintiffs' claim for conversion: the first sets forth the elements of conversion; the second claims that Plaintiffs "converted the website purchased by Legge" and "fraudulently induced" Legge to invest in Knukle Two; and the third claims that "Plaintiffs walked away from that deal." (Second Opposition, page 9, lines 11-18).

With respect to the first sentence, the elements of a claim for conversion under California law are settled. That is not a defense.

As for the second sentence, Plaintiffs are not sure how unsubstantiated claims of Plaintiffs' alleged conversion and fraudulent inducement are defenses to their conversion. Answering Defendants do not attempt to explain the relevance of their unsupported claims. Accordingly, Plaintiffs can only guess that Answering Defendants are relying on their sole argument once more.

Oddly, Answering Defendants concede that Plaintiffs first purchased the domain name "www.knukleinc.com", developed a website there, first developed the Marks and Names, contributed to the designs and artwork for merchandise bearing the Marks and Names, and admit that they are still in sole possession and control (to Plaintiffs' exclusion) of the domain name, website, designs, and artwork necessary for producing for sale merchandise brandishing the Marks and Names. (J. Legge Decl., at ¶ 1-5; G. Legge Decl., at ¶ 1-6; J. Legge Depo., at pages 33-38, and pages 50-52, 16, lines 16-25, pages 17-18; Declaration of Sean Myers, at ¶ 29; Declaration of Sean Myers, at ¶ 29). However, they also argue that Plaintiffs' claim for conversion should fail.

Plaintiffs have an undeniable ownership right to possess the property Answering Defendants currently control. Answering Defendants took that property away from Plaintiffs by acts of deceit and in furtherance of their infringing enterprise. Even if this Court sided entirely with Answering Defendants and held that Plaintiffs were only 50/50 owners of that property, Answering Defendants do not have a right to exclude Plaintiffs from that property and then use that property to sell

merchandise for the benefit of Knukle Two, a corporation, in which, Answering Defendants concede Plaintiffs have no ownership interest.

With respect to the third sentence, Answering Defendants do not specify which "deal" Plaintiffs "walked away from," or why this is legally significant. In addition, Answering Defendants misquote Plaintiffs as support for their ambiguously relevant comment. Plaintiff James Grooms' entire quote is "Immediately thereafter, and through the present, Brycee Phelan and I terminated all further contact with Gwen and John Legge and Artillery Distribution *so as to give us time to consult with an attorney to determine our future course of action.*" Plaintiffs have walked away from nothing. Plaintiffs are suing Answering Defendants for conversion after only months following the date of the alleged conversion.

Answering Defendants' argument, to the extent it is intelligible, fails for the same reasons set forth above in Plaintiffs' coverage of Plaintiffs' claims for federal and state unfair competition and tortious interference with prospective advantage. Accordingly, this Court should grant Plaintiffs' continued injunctive relief.

### 4. Plaintiffs' Claim For Cybersquatting Will Succeed.

Answering Defendants do not dispute that they registered, used, and/or trafficked in the "www.knukleinc.com" domain name which was identical to Plaintiffs' distinctive Marks and Names. Answering Defendants dispute the Court's finding that they **converted the domain name in bad faith** based upon their position that the domain name was **allegedly supposed to be assigned** to Knukle Two via **oral** agreement. This argument fails for the same reasons set forth above in the summary of Plaintiffs' claims for federal and state unfair competition. Accordingly, this Court should grant Plaintiffs' Application for a preliminary injunction.

### C. Answering Defendants' Controverted Facts Should Not Impact This Court's Irreparable Harm Or Balancing of the Hardships Analyses.

As noted by this Court, "In trademark infringement or unfair competition actions, once the plaintiff establishes a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief is not granted." *Vision Sports, Inc. v. Melville Corp.*, 888 F.3d

609, 612 n.3 (9th Cir. 1989). With respect to the balancing of hardships inquiry, this Court cited the same cases relied on by Plaintiffs in their Application for the finding that "defendants do not have a right to reap profits from marketing work that infringes plaintiffs' trademark." (Order on Plaintiffs' Motion for a Temporary Restraining Order, page 16, lines 3 through 21; citing *Hotmail Corp. v. Van$ Money Pie Inc.,* 1998 WL 388389 at *8 (N.D. Cal. April 16, 1998; and *Cadence Design Sys.,* 125 F.3d at 830).

Plaintiffs will not repeat the arguments set forth in Plaintiffs' Application in Sections V and X thereof, nor the facts respecting the evidence of actual confusion already manifest among the buying public. However, Plaintiffs respectfully request this Court to consider the fact that Plaintiffs have received further correspondence from companies asking about the whereabouts of their shipments of clothing, and further, correspondence from individuals who claim to have been offered a job with Knukle Two but want further clarification about the details of this lawsuit before they decide to accept Answering Defendants' offer for employment. (Phelan Supp. Decl., at ¶ 4).

In addition, to the extent that this Court needs further evidence that the harm Plaintiffs will suffer will be irreparable and greater than any harm Answering Defendants will suffer if this Court was to grant Plaintiffs' a preliminary injunction, Plaintiffs would also like to inform this Court that Answering Defendants have claimed to be preparing to start a different clothing company going "in an entirely different direction," that they have taken current orders for "Knukle Inc" (with a forwards "k") merchandise that they have no plans of filling, and that they no longer want to house their infringing inventory and have requested that Plaintiffs purchase the same at cost. (Declaration of Michelle McCliman ("McCliman Decl."), at ¶ 2; Supplemental Declaration of Christopher Villasenor, Esq. ("Villasenor Supp. Decl."), at ¶ 2; J. Legge Depo., at page 96, lines 7-12).

Actual confusion as to the origin of the Marks and Names persists, and just as Plaintiffs feared, Answering Defendants admit that they are not going to fill orders from first time purchasers of "Knukle Inc" merchandise which will no doubt threaten the value and continued viability of the Marks and Names. At the same time, Answering Defendants audaciously request that Plaintiffs purchase their infringing goods, and they are surprised when Plaintiffs refuse settlement proposals

that would exacerbate confusion and allow Answering Defendants to profit from their unlawful conduct.[6] Moreover, as Answering Defendants apparently do not intend on filling the orders they currently have for "Knukle Inc" merchandise, and they further want to purge their office of infringing merchandise seemingly to spend more time on their "new venture," it seems clear that they will suffer no hardship in being ordered to do or enjoined from doing precisely what they planned on doing in the first place. In addition, in light of the factual setting of this case, Plaintiffs question the propriety of this "new venture," and whether Answering Defendants will be using the trade secrets, confidential information, and/or relationships they appropriated from Plaintiffs to conduct the operations of this "new venture."

Therefore, this Court should, to avoid irreparable harm to Plaintiffs, a harm that on balance clearly outweighs any harm Answering Defendants' may suffer, grant the requested preliminary injunction.

### D. The Bond Already Posted By Plaintiffs As Ordered by This Court Should Stand.

Based on the fact that Answering Defendants have declared that Knukle Two has made no money, filled few orders, will not fill others, desires to purge itself of its infringing inventory, and further that Answering Defendants John and Gwen Legge plan to start a "new venture" in a "different direction", it follows that continued injunctive relief will not cause them any legally recognizable economic or other harm to Answering Defendants. Accordingly, it is respectfully requested that the Court require that Plaintiffs post no further bond in connection with the requested injunctive relief.

---

[6] Answering Defendants' discussion in their Second Opposition (page 2, lines 10-22, and page 3, lines 1-2) and Ms. Michelle McCliman's declaration (Declaration of Michelle McCliman, Esq. ("McCliman Decl."), at ¶ 2-4) regarding the contents of their settlement discussions with Plaintiffs' counsel is not only misleading and prejudicial but also excludable pursuant to Federal Rules of Evidence, Rule 408. Plaintiffs offer only this limited reply to protect themselves against the prejudice that would result from this Court's consideration of Answering Defendants' version of those discussions. Admittedly, Answering Defendants' counsel asked Plaintiffs' counsel to agree to place a landing page on the website at www.knukleinc.com (the same website that Answering Defendants were ordered to turn over to Plaintiffs in this Court's Order) that would direct visitors to Plaintiffs' separate "Knukle Inc" website and to Answering Defendants' separate website. This proposal would not eliminate confusion as to the rightful owner of the domain, Marks and Names, and was rejected. Opposing counsel failed to provide any alternative proposals. (Villasenor Supp. Decl., at ¶ 3). When Plaintiffs refused Answering Defendants' proposal, their counsel then claims that this was a "clear indication" of Plaintiffs' motivation to extort money from Answering Defendants. This is as ridiculous, irrelevant and wholly improper.

### E. Plaintiffs Request Further Injunctive Relief to Avoid Further Irreparable Harm Based Upon New Information.

Since the filing of Plaintiffs' Complaint and Application for Temporary Restraining Order filed with this Court on March 11, 2009, Plaintiffs' have obtained additional information through numerous discussions and correspondence with opposing counsel, expedited discovery, and review of Answering Defendants' First and Second Oppositions and supporting declarations. Plaintiffs have recently learned that Answering Defendants are planning to start a different clothing company going "in an entirely different direction," that they have taken current orders for "Knukle Inc" (with a forwards "k") merchandise that they have no plans of filling, and that they no longer want to house their infringing inventory and have requested that Plaintiffs purchase that inventory at cost. (Declaration of Michelle McCliman ("McCliman Decl."), at ¶ 2; Villasenor Supp. Decl., at ¶ 2; J. Legge Depo., at page 96, lines 7-12). In addition, as this injunction, if granted, will last through final disposition of this matter, Plaintiffs deem it necessary to amend and supplement the mandatory and prohibitory injunction it originally requested in their Application.

Accordingly, Plaintiffs respectfully submit herewith a Proposed Order for Preliminary Injunction with the intent to provide Plaintiffs with the relief necessary to protect the goodwill and reputation of the Marks and Names through trial.

### III. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court to grant them a Preliminary Injunction pending trial and maintain the bond at $10,000.

Respectfully Submitted,

DATED: 3/31/09

CATALYST LAW GROUP

*/s/ Chris Villasenor*
Christopher Villasenor
Attorney for Plaintiffs
JAMES GROOMS, BRYCEMARIE PHELAN and
KNUKLE, INC., A COLORADO CORPORATION