# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES GROOMS; BRYCEMARIE PHELAN; KNUCKLE,INC., a Colorado Corporation,<br><br>                                        Plaintiffs,<br>      vs.<br><br>JOHN LEGGE; GWEN LEGGE; KNUKLE, INC., a California Corporation; ARTILLERY DISTRIBUTION, an entity, form unknown; SEAN MYERS; DEVIN MERCADO; and DOES 1 through 50 inclusive,<br><br>                                        Defendants. | CASE NO. 09cv489 - IEG - POR<br><br>ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS OR TRANSFER THE ACTION FOR IMPROPER VENUE<br><br>[Doc. Nos. 44, 45.] |

In this unfair competition action, Defendants submit three alternative motions: to dismiss for improper venue, to transfer for improper venue, or to transfer for convenience.[1] (Doc. Nos. 44, 45) Plaintiffs opposed both motions and Defendants replied. Having considered the parties' submissions, and for the reasons set forth below, the Court DENIES Defendants' motions.

## BACKGROUND

**A.    The Parties**

Plaintiffs James Grooms and Brycemarie Phelan are individuals residing in Colorado. Grooms and Phelan own plaintiff Knukle, Inc. ("Knukle Colorado"), a Colorado corporation.

---

[1] Defendants John Legge, Gwen Legge, and Knukle Inc. submit a separate motion that is identical to the motion submitted by Sean Myers, Devin Mercado, and Artillery Distribution. The Court addresses the motions simultaneously.

Defendants John Legge and Gwen Legge (collectively the "Legges") are a married couple living in Orange County, California. The Legges own defendant Knukle, Inc. ("Knukle California"), a California corporation with a principal place of business in Orange County, California.

Defendants Sean Myers and Devin Mercado own and operate Artillery Distribution, which is a graphic design company. Myers, Mercado, and Artillery Distribution moved from San Diego to Orange County, California on March 1, 2009.

**B.     Factual Background**

In May 2008, Grooms and Phelan created the name "Knukle Inc" ("Knukle" was deliberately misspelled by omitting the "c" and turning the second "k" backwards). Their designs, which combined the name Knukle Inc. with a symbol representing brass knuckles, became the genesis of a line of apparel and accessories targeted at fans of extreme sports and mixed martial arts.

On July 8, 2008, Grooms and Phelan approached Artillery Distribution, asked for its assistance refining the Knukle designs, and requested estimates for printing designs on apparel and accessories.

In late August 2008, Grooms and Phelan sought investors for Knukle Inc. through www.craigslist.com.[2] Gwen Legge wanted to invest and the parties agreed to meet.

On September 13, 2008, the parties met in Dana Point, California. The Legges orally agreed to invest $115,000 in exchange for 50% ownership of "Knukle Inc." The parties agreed to be "50-50 partners," but the terms of this oral agreement are disputed. Plaintiffs assert the parties agreed to be 50-50 partners, with no mention of the formation of a corporation or the transfer of the trademark. The Legges claim the parties orally agreed to form a California corporation, with the Legges providing financing and plaintiffs transferring the trademark application to Knukle California.

Based on this agreement, the Legges formed Knukle California. The Legges attempted to build the Knukle brand by paying for designs, silkscreening, artwork, promotions, sponsorships, and a booth at a major trade show. Additionally, they provided office space in Santa Ana, California. Plaintiffs never received shares of Knukle California and never transferred ownership of the Knukle mark.

---

[2] "Craigslist.com" is a free website which is equivalent to an online classified advertisement section of a newspaper.

1    On November 28, 2008, Grooms formed Knukle Colorado. On December 16, 2008, Gwen
2 Legge called Plaintiffs and asked them to assign their rights to the Knukle mark and move the
3 company's headquarters to Orange County, California. Plaintiffs declined both requests, which began
4 the deterioration of the business relationship.

5    The Legges began marketing apparel using the brand name "Knukle Inc" (with the second "k"
6 turned forwards) (the "Knukle California mark"). On December 18, 2008, Knukle California filed a
7 federal "actual use" trademark application for the Knukle California mark. The Legges filed this
8 application because they believed Plaintiffs would not transfer their rights to the Knukle mark.

9    On January 22-24, 2009, the Legges sent Myers and Mercado to the ASR trade show to sell
10 "Knukle Inc." designs and merchandise. Plaintiffs did not attend the ASR show because Artillery
11 Distribution released all of the "Knukle, Inc." merchandise to the Legges. Further, a trade show
12 representative informed Grooms that only the Legges were allowed to attend the show.

13   Since the dissolution of the business relationship, Knukle California has promoted its product
14 using the Knukle California mark and the Knukle website. The Legges assert they never attempted
15 to exclude plaintiffs from Knukle California. Instead, the Legges assert, plaintiffs effectively
16 abandoned the business, moved to Colorado, and started a competing venture.

17 **C.    Procedural Background**

18   On March 11, 2009, Plaintiffs filed a complaint asserting fifteen claims for relief: (1) unfair
19 competition and false designation under 15 U.S.C. §1125; (2) cybersquatting, in violation of 15 U.S.C.
20 § 1125(d); (3) violations of California Business & Professions Code §§ 17200, 17500; (4) unfair
21 competition under California's common law; (5) trademark and trade name infringement; (6)
22 conversion; (7) fraud; (8) intentional interference with prospective business advantage; (9) intentional
23 interference with economic relationships; (10) defamation; (11) breach of oral/implied contract; (12)
24 civil conspiracy; (13) declaratory relief; (14) accounting; and (15) constructive trust/ equitable lien.

25   On March 17, 2009, the Court issued a Temporary Restraining Order, restraining Defendants
26 use of the Knukle Inc. mark. On April 8, 2009, the Court issued a preliminary injunction.

27                          **LEGAL STANDARDS**

28 **A.    Venue**

If a plaintiff commences an action in the wrong district, upon timely and proper motion, the court must either dismiss the case or transfer it to an appropriate forum. 28 U.S.C. § 1406(a). The plaintiff bears the burden of making a "prima facie showing of proper venue." See Nissan Motor Co. v. Nissan Computer Corp., 89 F. Supp. 2d 1154, 1161 (C.D. Cal. 2000). Although the Court draws inferences in favor of the non-moving party, it need not accept the pleadings as true and may consider facts outside the pleadings. Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1137 (9th Cir. 2004).

In cases involving a federal question, proper venue lies in one of three districts: (1) if all defendants reside in the same state, a district where any defendant resides; (2) a district "in which a substantial part of the events giving rise to the claim occurred"; or (3) if no other proper district exists, wherever any defendant may be found. 28 U.S.C. § 1391(a). In a state with multiple judicial districts, a corporation resides in "any judicial district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." 28 U.S.C. § 1391(c).

**B.     Personal Jurisdiction**

Personal jurisdiction over a non-resident defendant can be either general or specific. General jurisdiction exists when the defendant's contacts with the forum state are substantial or continuous and systematic, a "fairly high" standard. Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1086 (9th Cir.2000). The defendant's contacts must approximate physical presence in the forum state. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir. 2004). .

Specific jurisdiction exists when the cause of action relates to the defendant's activities within the forum. Data Disc, Inc. v. Systems Tech. Assoc, Inc., 557 F.2d 1280, 1286 (9th Cir. 1977). Courts implement a three-prong test: (1) the non-resident defendant must purposefully direct its conduct at the forum; (2) the claim must have arisen from defendant's forum-related conduct; and (3) jurisdiction must be reasonable. Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir.1987).

Even if venue is proper, a court may transfer the action to another district "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a).

**DISCUSSION**

**A.     Motion to Dismiss or Transfer**

i.     Parties Arguments

Defendants assert venue is improper because all Defendants reside in Orange County California, which is in the Central District of California. 28 U.S.C. § 84. Further, Defendants argue the majority of events occurred in the Central District of California.

Plaintiffs argue venue is proper because, if the Southern District were a separate state, Artillery Distribution's contacts with the forum would justify the exercise of general jurisdiction. Plaintiffs note Artillery Distribution maintained its principal place of business in this district until March 1, 2009. (Decl. Sean Myers, ¶ 5.) According to Plaintiffs, the Artillery Distribution website continues to state, "We are based out of San Diego, California." (Pl. Opp., Doc. No. 54, Exhibit A.) Alternatively, Plaintiffs argue specific jurisdiction would be appropriate because both Knukle California and Artillery Distribution purposefully availed themselves of the district by taking the following actions: contracting to produce silkscreen images, designing the Knukle California mark, and selling infringing work at the ASR trade show.

ii. Analysis

Because California has multiple judicial districts, the Court's venue determination begins with a personal jurisdiction analysis, treating the Southern District as if it were a separate state. The Court first turns to the question of specific jurisdiction.

The Southern District would have specific jurisdiction over Knukle California if the district were a separate state. Courts implement a three-prong test to evaluate specific jurisdiction: (1) the non-resident defendant must purposefully direct its conduct at the forum; (2) the claim must arise out of defendant's forum-related conduct; and (3) jurisdiction must be reasonable. Yahoo! Inc. v. La Ligue Contre le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc). The Court applies these factors in turn.

First, Knukle California purposefully directed conduct at the forum. "'Purposeful availment' requires that the defendant 'have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.' " Sher v. Johnson, 911 F.2d 1357, 1362 (9th Cir.1990)(quoting Sinatra v. National Enquirer, Inc., 854 F.2d 1191, 1195 (9th Cir.1988)). Knukle California hired defendant Artillery Distribution, at the time a San Diego resident, to design the allegedly infringing mark. Further, Knukle California's sales representatives sold merchandise

1 at the ASR trade show. These actions were purposefully directed at the forum.

2 Second, Plaintiffs' claims directly arise out of Defendants forum-related conduct. Plaintiffs allege Knukle California infringed their trademark by hiring Artillery Distribution, at the time a forum resident, to create the Knukle California mark. Further, Knukle California allegedly committed unfair competition when it sent sales representatives to the ASR trade show to sell Knukle California merchandise. These two forum-related acts underlie Plaintiffs' claims, satisfying the second prong.

Third, the Southern District's hypothetical exercise of jurisdiction would comport with notions of "fair play and substantial justice." Burger King Corp. Rudzewicz, 471 U.S. 462, 477 (1985). This "reasonableness" determination requires the Court balance the following factors:

> (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.

Bancroft & Masters, Inc. v. Augusta Nat. Inc., 223 F.3d 1082, 1088 (9th Cir.2000). In the instant case, the factors favor a finding of reasonableness. First, defendant Knukle California injected itself into the forum by soliciting business, contracting with forum residents, and sending agents to sell its product at the ASR trade show. Second, litigation in the forum would not unduly burden Knukle California because its principal place of business is in Orange County, California. Third, the sovereignty of Defendants' state, California, is a non-issue: the action will be adjudicated in California. Fourth, California's interest is served by adjudication in the Southern District. Fifth, the controversy can be efficiently resolved in the Southern District because of the close proximity of witnesses and evidence. Sixth, a substantial portion of the acts giving rise to the claim occurred in the forum. Seventh, the Central District would also be an acceptable forum, weighing in favor of transfer. Balancing these factors, the Court finds the Southern District's hypothetical exercise of jurisdiction would comport with notions of fair play and substantial justice.

In conclusion, the Southern District could exercise personal jurisdiction over Knukle California. Therefore, Knukle California "resides" in the Southern District for the purposes of section 1391. Because all defendants reside in California, and Knukle Calfornia resides in the forum, the

Southern District is a proper venue. The Court now evaluates the motion to transfer for convenience.

**B.    Motion to Transfer for Convenience**

i.    Parties' Arguments

Defendants argue the convenience factors weigh in favor of section 1404(a) transfer. Defendants assert they all reside in the Central District of California. Further, Defendants argue Plaintiffs, as Colorado residents, would be no more inconvenienced by litigation in the Central District than litigation in the Southern District of California. Additionally, Defendants argue the majority of the events occurred in the Central District. Finally, Defendants argue the majority of witnesses and evidence are located in the Central District of California.

Plaintiffs argue the convenience factors weigh against transfer. Plaintiffs brought the action in the Southern District of California and argue the Southern District is a more convenient forum. Plaintiffs note Defendants fail to argue they will be unable defend the action in the Southern District. Finally, Plaintiffs argue judicial economy favors venue in the Southern District as the Court is already familiar with the case after temporary restraining order and preliminary injunction proceedings.

ii.    Analysis

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." When determining whether section 1404(a) transfer is appropriate, courts consider multiple factors derived from the *forum non conveniens* context:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir.2000). The moving party must show transfer is appropriate. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir. 1979). Defendants must make a strong showing of inconvenience to warrant upsetting Plaintiffs' choice of forum. Decker Coal co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986).

Although a few factors favor transfer, the Court finds most factors indicate transfer to the

1 Central District of California is unnecessary.  First, Defendants executed a substantial number of
2 relevant agreements amongst themselves in the Southern District of California.  Second, the districts
3 are equally familiar with the governing law.  Third, Plaintiffs chose the Southern District of California.
4 Fourth, as detailed above, Defendants have substantial contacts with the Southern District that would
5 justify an exercise of personal jurisdiction if the district were a separate state.  Fifth, as detailed above,
6 the very contacts that would justify an exercise of personal jurisdiction are the events underlying
7 Plaintiffs' claims.  Sixth, Defendants fail to argue the cost of litigation differs between the two
8 districts.  Seventh, Defendants fail to argue the Court would be unable to compel attendance of
9 unwilling non-party witnesses.  Eighth, Defendants argue the sources of proof are in the Central
10 District, but fail to address whether it would be burdensome to produce those sources in the Southern
11 District.  Balancing these factors, the Court finds Defendants have failed to make a strong showing
12 of inconvenience to warrant upsetting Plaintiffs' choice of forum.

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' motions in their entirety.

**IT IS SO ORDERED.**

**DATED:  May 22, 2009**

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**